*509 ATTORNEY DISCIPLINARY PROCEEDINGS
PER CURIAM.
This disciplinary matter arises from six counts of formal charges filed by the Office of Disciplinary Counsel (“ODC”) against respondent, Aylmer M. Wyche, III, a currently suspended attorney.[1]
FORMAL CHARGES
Counts I and II — The Todd Matter
Fred Todd retained respondent to make revisions to his will, the original of which he gave to respondent. Thereafter, Mr. Todd and his wife, Irma, repeatedly called respondent’s office for an update on the matter, but he failed to return the calls. Following Mr. Todd’s death of cancer, Mrs. Todd made several requests to respondent for the return of the original will, but he failed to comply with these requests. Mrs. Todd subsequently filed a *510 complaint against respondent with the ODC.
On September 29, 1999, October 15, 1999, and again on October 25, 1999, the ODC forwarded a copy of the complaint to respondent by certified and regular U.S. mail. Respondent faded to reply to the complaint. The ODC thereafter served 12respondent with a subpoena compelling him to appear and answer the complaint under oath.
The ODC alleges that respondent’s conduct in this matter violates the following provisions of the Rules of Professional Conduct: Rules 1.3 (failure to act with diligence and promptness in representing a client), 1.4 (failure to communicate with a client), 1.16(d) (termination of the representation), 8.1(c) (failure to cooperate with the ODC in its investigation), 8.4(a) (violation of the Rules of Professional Conduct), 8.4(d) (engaging in conduct prejudicial to the administration of justice), and 8.4(g) (failure to cooperate with the ODC in its investigation).
Counts III and IV — The Fletcher Matter
In May 1998, Doris Fletcher paid respondent $500 to handle the succession of her husband, Clarence Dale Fletcher. At the time he was retained, respondent was suspended from the practice of law in Wyche I, but he nevertheless failed to advise his client of this fact; indeed, respondent suggested to Mrs. Fletcher that the succession would be completed within ten days. Respondent eventually informed Mrs. Fletcher that he had filed the succession pleadings, and in August 1998, he provided her with a judgment of possession which was allegedly rendered in the matter entitled Succession of Clarence Dale Fletcher, No. 11,732 on the docket of the 26th Judicial District Court for the Parish of Bossier. In fact, however, respondent had not filed the succession pleadings, and he had fabricated the judgment of possession.[2] Attorney Donald Wilson completed the Fletcher succession and was paid $500 by respondent |sfor his work in the case. Mrs. Fletcher subsequently filed a complaint against respondent with the ODC.
On October 28, 1999, the ODC forwarded a copy of the complaint to respondent by certified mail. Respondent failed to reply to the complaint. The ODC thereafter served respondent with a subpoena compelling him to appear on March 23, 2000 with his entire file in the Fletcher matter. Respondent appeared and gave a sworn statement, but he did not produce his file.
The ODC alleges that respondent’s conduct in this matter violates the following provisions of the Rules of Professional Conduct: Rules 1.1 (failure to provide competent representation to a client), 1.3, 1.4, 1.5 (fee arrangements), 5.5 (engaging in the unauthorized practice of law), 8.1(c), 8.4(a), 8.4(b) (commission of a criminal act reflecting adversely on the lawyer’s honesty, trustworthiness, or fitness as a lawyer), 8.4(c) (engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation), 8.4(d), and 8.4(g).
Counts V and VI — The Malone Matter
In June 1996, Geneva and Jerry Malone retained respondent to handle the succession of Alvin Marion Malone. Respondent neglected the matter and failed to communicate with his clients. Thereafter, respondent’s suspension from the practice of law in Wyche I became final on October 4, *511 1996, but he failed to advise his clients of this fact. Respondent eventually informed his clients that he had filed the succession pleadings, and in August 1998, he provided Mr. Malone with a judgment of possession which was allegedly rendered in the matter entitled Succession of Alvin Marion Malone, No. 11,798 on the docket of the 26th Judicial District Court for the Parish of Bossier. In fact, however, respondent had not filed the succession |4pleadings, and he had fabricated the judgment of possession.[3] The Malones subsequently retained new counsel, Samuel Caverlee, to complete the matter, and in turn, Mr. Cav-erlee filed a complaint against respondent with the ODC.
On April 3, 2000, the ODC forwarded a copy of the complaint to respondent by certified mail. Respondent failed to reply to the complaint. The ODC thereafter served respondent with a subpoena compelling him to appear on November 28, 2000 with his entire file in the Malone matter. Respondent appeared and gave a sworn statement, but he did not produce his file.
The ODC alleges that respondent’s conduct in this matter violates the following provisions of the Rules of Professional Conduct: Rules 1.3, 1.4, 5.5, 8.1(c), 8.4(a), 8.4(b), 8.4(c), 8.4(d), and 8.4(g).
DISCIPLINARY PROCEEDINGS
On April 12, 2001, the ODC filed six counts of formal charges against respondent. Respondent failed to answer or otherwise reply to the formal charges. Accordingly, the factual allegations contained therein were deemed admitted and proven by clear and convincing evidence pursuant to Supreme Court Rule XIX, § 11(E)(3). No formal hearing was held, but the parties were given an opportunity to file with the hearing committee written arguments and documentary evidence on the issue of sanctions.
In its submission, the ODC argued that respondent’s conduct was intentional and caused injury to his clients, the legal system, the profession, and the disciplinary system. The ODC also argued that under the ABA’s Standards for Imposing Lawyer | Sanctions, disbarment is the baseline sanction for respondent’s misconduct. The ODC suggested several aggravating factors are present in this case, including respondent’s prior disciplinary offenses,[4] dishonest or selfish motive, pattern of misconduct, multiple offenses, bad faith obstruction of the disciplinary proceeding by intentionally failing to comply with the orders of the disciplinary agency, refusal to acknowledge the wrongful nature of the conduct, vulnerability of the victims, and substantial experience in the practice of law (admitted 1971). The ODC identified no mitigating factors. Concluding there is no reason to deviate downward from the baseline sanction, the ODC recommended respondent be disbarred.
Respondent filed nothing for the hearing committee’s consideration.

Hearing Committee Recommendation

After reviewing the record, the hearing committee concluded that respondent committed the substantive misconduct charged *512 in the formal charges. In aggravation, the committee considered respondent’s prior disciplinary record for misconduct similar to that at issue here, and particularly the fact that respondent violated two prior orders of suspension by engaging in the practice of law and failing to disclose his suspension to his existing clients. The committee felt that respondent’s most egregious conduct involved his attempts to mislead his clients in the two succession matters by fabricating judgments of possession, supplying erroneous case numbers on prepared judgments, and fabricating official court seals and judges’ signatures on the documents. The committee concluded that respondent’s “pattern of neglect of his duties as a lawyer which caused harm to his clients, failure to respond to the proper | (¡inquiries of the Office of Disciplinary Counsel, failure to respect the prior discipline issued by the Disciplinary System and the Supreme Court demonstrates an utter disregard or contempt for the legal profession which should preclude Respondent from the practice of law.” Based on this reasoning, the committee recommended that respondent be disbarred.
Neither respondent nor the ODC objected to the hearing committee’s recommendation.

Disciplinary Board Recommendation

The disciplinary board agreed that re-_ spondent committed the substantive misconduct charged in the formal charges. The board found respondent’s misconduct was knowing and intentional, and that he violated duties owed to his clients, the legal system, and the legal profession. The legal matters of Mrs. Todd, Mrs. Fletcher, and Mrs. Malone were unnecessarily delayed by respondent’s fraudulent representations, lack of diligence, and failure to communicate. In addition, respondent fraudulently accepted legal fees from Mrs. Fletcher with the full knowledge that he was suspended from the practice of law. The legal profession was harmed by respondent’s unauthorized practice of law during the period of his suspension. Restrictions on the practice of law are designed to protect the public, protect the integrity of the judicial system, and provide a means of regulation of the legal profession. Respondent’s failure to recognize these restrictions created the potential for injury to the public, the legal system, and the legal profession. The legal profession was further harmed by respondent’s failure to cooperate in the disciplinary investigation of the complaints filed against him. An attorney’s failure to cooperate in |7a disciplinary investigation unjustly delays and imposes an additional burden upon the disciplinary system.
In aggravation, the board recognized respondent’s prior disciplinary record, dishonest or selfish motive, pattern of misconduct, multiple offenses, bad faith obstruction of the disciplinary process, vulnerability of the victims, and substantial experience in the practice of law. The board found the record does not support any mitigating factors. Considering the weight of the aggravating factors present, the board recommended respondent be disbarred. The board further recommended that respondent be assessed with all costs and expenses of these proceedings, with legal interest to commence running thirty days from the date of finality of the court’s judgment until paid.
Although neither respondent nor the ODC objected to the disciplinary board’s recommendation, this court, on its own motion, ordered briefing pursuant to Supreme Court Rule XIX, § 11(G)(1)(a). The March 18, 2003 order directed the parties “to address whether the sanction of permanent disbarment pursuant to Su *513 preme Court Rule XIX, §§ 10(a) and 24, as amended August 1, 2001, is appropriate under the facts of this case.” The ODC timely filed its brief in response to the order, urging that permanent disbarment be imposed. Respondent filed nothing for the court’s consideration.
DISCUSSION
The deemed admitted facts in this case support a finding of professional misconduct that is unquestionably serious in nature. Respondent engaged in the unauthorized practice of law after being disciplined by this court, and in fact, did so on more than one occasion and in more than one client matter. Furthermore, | ^respondent fabricated court pleadings in two cases in an apparent attempt to conceal from his clients the fact that he had been suspended from the practice of law. No less serious is respondent’s neglect of his clients’ legal matters, failure to communicate with his clients, and failure to cooperate with the ODC in its investigation. There are no mitigating factors present; however, numerous aggravating factors exist. Under these circumstances, we conclude the baseline sanction is disbarment. However, given the egregiousness of respondent’s misconduct, we will further consider whether permanent disbarment is warranted, as set forth in the 2001 amendments to Supreme Court Rule XIX, § 10 and § 24.
In Appendix E to the Rules of Lawyer Disciplinary Enforcement, we have set forth several guidelines illustrating the types of cases which might warrant permanent disbarment. These guidelines were not intended to bind this court in its deci-sionmaking, but to provide “useful information to the public and to lawyers concerning the types of conduct the Court might consider to be worthy of permanent disbarment.” Respondent’s conduct in the matters at issue falls squarely within three of the permanent disbarment guidelines, namely Guideline 2 (“intentional corruption of the judicial process, including but not limited to bribery, perjury, and subornation of perjury”), Guideline 8 (“following notice, engaging in the unauthorized practice of law ... during the period of time in which the lawyer is suspended from the practice of law or disbarred”), and Guideline 9 (“instances of serious attorney misconduct ... when the misconduct ... is preceded by suspension or disbarment for prior instances of serious attorney misconduct. ... Serious attorney misconduct is defined for purposes of these guidelines as any misconduct which results in a suspension of more than one year.”).
|aWe do not lightly impose the sanction of permanent disbarment. In re: Morphis, 01-2803 (La.12/4/02), 831 So.2d 934. Nonetheless, we are firmly convinced that we would be remiss in our constitutional duty to regulate the practice of law if we did not impose that sanction here. Respondent engaged in conduct that was actively intended to frustrate the administration of justice. This court cannot and will not tolerate such conduct by an attorney. Respondent’s actions convincingly demonstrate he does not possess the requisite moral fitness to practice law in this state. He must be permanently disbarred.[5]
*514 DECREE
Upon review of the findings and recommendations of the hearing committee and disciplinary board, and considering the record, it is ordered that the name of Aylmer M. Wyche, III, Louisiana Bar Roll number 13720, be stricken from the roll of attorneys and that his license to practice law in the State of Louisiana be revoked. Pursuant to Supreme Court Rule XIX, § 24(A), it is further ordered that respondent be permanently prohibited from being readmitted to the practice of law in this state. All costs and expenses in the matter are assessed against respondent in accordance with Supreme Court Rule XIX, § 10.1, with legal interest to commence thirty days from the date of finality of this court’s judgment until paid.

. On September 20, 1996, respondent was suspended for a period of two years, with all but ninety days deferred, for misconduct which occurred between 1987 and 1992. In re: Wyche, 96-1033 (La.9/20/96), 679 So.2d 1335 ("Wyche I ”). Respondent did not apply to this court for reinstatement after serving the active portion of the suspension, and accordingly, he remained suspended from the practice of law. On March 31, 2000, this court suspended respondent for three years for misconduct including engaging in the unauthorized practice of law in February 1998. In re: Wyche, 00-0029 (La.3/31/00), 756 So.2d 311 ("Wyche II”).

. The case that was actually assigned the docket number listed by respondent in the Fletcher "judgment of possession” was entitled Succession of Zelma Jean Johnson. That matter was handled by Shreveport attorney William Robert McKenzie, with whom respondent has no connection.

. The case that was actually assigned the docket number listed by respondent in the Malone "judgment of possession” was entitled the Succession of Leo Elie Martin, II. That matter was handled by the Benton, Louisiana law firm of Wallace and Sutherland, with which respondent has no connection.

. In addition to the suspensions previously discussed, respondent was admonished in 1997 for failing to cooperate in the ODC's investigation of a complaint filed against him (97-ADB-025). He was also admonished in 1993 for misconduct arising out of his neglect of a domestic relations matter (93-ADB-054).

. In Louisiana State Bar Ass’n v. Chatelain, 573 So.2d 470 (La. 1991), we observed that it is generally inappropriate to discipline an attorney a second time for misconduct that occurred before or concurrently with the misconduct at issue in the attorney’s first disciplinary proceeding. Although the substantive misconduct at issue here occurred in the 1996-1998 time frame, the same general time frame as the unauthorized practice of law in Wyche II, respondent's refusal to cooperate in the investigation of the instant *514 complaints hindered the ODC from investigating and developing the facts necessary to bring these formal charges at the same time as the formal charges in Wyche II. Under such circumstances, we decline to employ the Chatelain approach.