ATTORNEY DISCIPLINARY PROCEEDINGS.
PER CURIAM.
This disciplinary matter involves numerous counts of misconduct filed by the Office of Disciplinary Counsel (“ODC”) against respondent, George A. Guidry, Sr., an attorney licensed to practice law in the State of Louisiana, but who is currently disbarred.
PRIOR DISCIPLINARY HISTORY
Prior to addressing the instant misconduct, we find it helpful to review respondent’s prior disciplinary history.
In In re: Guidry, 96-0990 (La.7/1/96), 677 So.2d 116 (“Guidry I”), respondent was charged with commingling his own funds with client funds between February 1, 1992 and July 31, 1994. Among the mitigating factors asserted by respondent was that he had been diagnosed with manic depression, a recurring psychological disorder. We imposed a fully-deferred six-month suspension and placed respondent on probation for two years. As a condition of probation, we directed that respondent provide reports from his therapist to the ODC to demonstrate he was maintaining his medication for his manic depression condition.
Thereafter, seven complaints were filed against respondent alleging between April and December 1996, he commingled and converted client funds, failed to act with diligence, misled a client and aided and abetted a non-lawyer in the unauthorized practice of law. Prior to the filing of formal charges, respondent acknowledged this | ¡.misconduct and tendered a petition for consent discipline, seeking disbarment. We approved the petition for consent discipline and disbarred respondent effective August 30, 1997. In re: Guidry, 97-3219 (La.2/20/98), 706 So.2d 966 (“Guidry II”).
UNDERLYING FACTS
The charges against respondent involve a total of fourteen separate matters.[1] We summarize these matters as follows:

Bernard, Jones and Lopez Matters

Barbara Bernard and Anita Veronica Lopez retained respondent to represent their interests in legal matters. Additionally, John Penny retained respondent to represent Dale Jones in criminal proceedings. Subsequently, respondent neglected to take any action on behalf of his clients, as well as refused to communicate with and/or misrepresented facts to his clients relative to the status of their proceedings. Ms. Bernard, Mr. Penny and Ms. Lopez requested a return of the unearned fees paid to respondent in the amounts of $317.50, $700 and $360, respectively. However, respondent failed to comply. Ultimately, Ms. Bernard retained other counsel to handle her case. As to the *527 Jones matter, respondent neglected to respond to the ODC’s requests for information in the matter, as well as failed to comply with a subpoena compelling his cooperation.
| ^Dobbins-Craig Matter
In April 1996, Dorothy Dobbins-Craig, an Illinois resident, retained respondent for $350 to represent her interests relative to a real estate closing. Specifically, she requested he transfer the title on the immovable property and entrusted him with funds to pay the back taxes. For more than one year, respondent failed to comply with his client's requests and, as a result, Ms. Craig’s property was placed in adjudication. Ultimately, he took measures to have the title transferred, but neglected to ever pay the back taxes. As a result, Ms. Dobbins-Craig had to travel from Illinois to resolve the matter. She paid the taxes with penalties. Respondent has not made restitution to his client, in the amount of approximately $2,920 with interest and penalties.

Gaudin Firm Matter

The law firm of Gaudin and Gaudin had represented Larry Burrell in a personal injury suit. When respondent advised the Gaudin firm that he was taking over the representation at the request of Mr. Bur-rell, respondent agreed in writing in March 1997 to protect the firm’s interest in the settlement of the case. Respondent negotiated a settlement and, in May 1997, he forwarded a cheek in the amount of $3,941.36 to the Gaudin firm representing the amount owed. The check was returned for insufficient funds. The Gaudin Firm’s efforts to amicably resolve the matter were to no avail.

Jones and Williams Matters

Prior to 1997, respondent settled the personal injury cases of two of his clients, Bernadette Jones and Ronald Williams. Respondent withheld $1,039 from Ms. Jones’ settlement and $1,542 from Mr. Williams’ settlement for payment of their respective- medical expenses. In both cases, respondent neglected to provide reimbursement to |4the medical provider. The provider referred the matters to a collection agency, which adversely reflected on the respective credit record of respondent’s clients.

Bailey Matter

In the course of investigating a complaint filed by Lynette Bailey,[2] the ODC served a subpoena on respondent requesting him to appear for a deposition and produce documents. Respondent failed to comply with the subpoena.

Louisiana Association of Educators Matter

From October 1, 1996 to March 1, 1997, respondent was ineligible to practice law stemming from his failure to pay his bar dues and comply with his mandatory continuing legal education requirements. Nonetheless, during that period, respondent represented two clients in a suit against the Louisiana Association of Educators (“LAE”). During the course of the litigation, he also propounded discovery and responded to discovery requests.
The LAE subsequently filed a complaint with the ODC. In connection with its investigation of the complaint, the ODC served a subpoena on respondent requesting him to appear for a deposition and produce documents. Respondent failed to comply with the subpoena.

*528
Young Matter

In February 1997, during the period when he was ineligible to practice law, respondent permitted his paralegal, Oliver Coleman, to negotiate and settle the personal [¡¡injury claim of respondent’s client, Oscar Young. The settlement draft was issued to Mr. Young and Mr. Coleman, as representing counsel. Although respondent withheld funds in the amount of $2,232.95 from the settlement to satisfy the outstanding medical lien of the England-Masse Chiropractic Clinic, the funds were never forwarded to the medical provider, despite numerous requests over a period of fifteen months.
Subsequently, respondent failed to comply with the ODC’s requests for information regarding the disciplinary complaint involving the Young matter. He also failed to comply with a subpoena issued by the ODC seeking respondent’s appearance and production of documents at a scheduled deposition in May 1998.

Smith Matter

In July 1996, Derrick Smith retained respondent to represent him in a personal injury matter, Thereafter, respondent negotiated a settlement on behalf of his client. Although respondént withheld $1,683 from the settlement funds to pay his client’s medical provider, he failed to do so. After a period of two years, the matter was referred to a credit agency, adversely reflecting on Mr. Smith’s credit record.
Ultimately, Mr. Smith filed á complaint ■with the ODC. In connection with its investigation of the complaint, the ODC served a subpoena on respondent requesting him to appear for a deposition and produce documents. Respondent failed to comply with the subpoena.

Lodge and Banks Matters

Leroy Lodge and Linda and Julie Banks retained respondent to represent them in their respective personal injury matters. Subsequently, respondent negotiated settlements on behalf of his clients. Although respondent withheld $1,712 from Mr. | (¡Lodge’s settlement funds and $1,210 from the Banks’ settlement funds to pay his clients’ medical providers, he failed to do so. Approximately three years following the settlements, the unpaid medical bills were turned over to a collection agency, adversely reflecting on the credit records of respondent’s clients.
Eventually, the clients filed disciplinary complaints with the ODC. In connection with its investigation of the complaints, the ODC served a subpoena on respondent requesting him to appear for a deposition and produce documents. Respondent failed to comply with the subpoena.

Mercadel Matter

Arthur Mercadel retained respondent to represent him in an employment discrimination matter. Respondent filed the suit on behalf of his client. However, the court granted the defendant’s exception of prematurity on the basis that an arbitration proceeding, at plaintiffs costs, was required before suit could be filed. Respondent did not want to advance the costs for the arbitration proceeding, and neglected to advise his client of the status of the case. After he was disbarred in Guidry II, respondent did not properly withdraw from the representation, nor did respondent notify his client of his discipline.
DISCIPLINARY PROCEEDINGS

Formal Charges

Between May 1999 and September 2000, the ODC filed three consolidated sets of formal charges against respondent alleging violations of Rules 1.1(a) (incompetence), *529 1.3 (lack of diligence), 1.4(a) (failure to keep client reasonably informed about the status of legal matter and failure to comply with reasonable |7requests for information), 1.15 (failure to keep client and third party funds separate from the lawyer’s own property, promptly deliver funds or property owed to a client or third party and render a full accounting upon request, and failure to place property subject to a dispute with another party in trust), 1.15(a) (failure to keep client and third party funds separate from the lawyer’s own property), 1.15(b) (failure to promptly account for and deliver funds or property owed to a client or third party), 1.16(d) (failure to protect client interests upon termination of representation), 8.1(b) (failure to respond to a lawful demand for information from a disciplinary authority), 8.1(c) (failure to cooperate with the ODC in its investigation), 8.4(a) (violating the Rules of Professional Conduct), 8.4(b) (commission of a criminal act adversely reflecting on a lawyer’s honesty, trustworthiness, or fitness as a lawyer), 8.4(c) (engaging in conduct involving deceit, dishonesty, fraud, or misrepresentation), 8.4(d) (engaging in conduct prejudicial to the administration of justice) and 8.4(g) (failure to cooperate with the ODC) of the Louisiana Rules of Professional Conduct, as well as Supreme Court Rule XIX, § 26(A) (failure to notify clients of disbarment).
Respondent filed an answer to the formal charges. A formal hearing was held before the committee. The ODC presented the testimony of the complainants, as well as documentary evidence. Respondent, who was represented by counsel, appeared at the hearing and testified.

Recommendation of the Hearing Committee

Following a formal hearing, the hearing committee concluded there was clear and convincing evidence to support the formal charges at issue. Addressing the issue of sanctions, the committee recognized aggravating factors of prior disciplinary offenses, pattern of misconduct, multiple offenses, bad faith obstruction of the ^disciplinary process by intentionally failing to comply with rules or orders of the disciplinary agency, vulnerability of the victims, substantial experience in the practice of law[3] and indifference to making restitution. As mitigating factors, the committee recognized personal or emotional problems stemming from respondent’s history of substance abuse concerns.
Finding the misconduct took place during the same time frame as the misconduct subject of Guidry II, the committee recommended the disbarment run concurrent with the disbarment imposed in Guidry II. Additionally, the committee proposed respondent .be ordered to make restitution in excess of $17,158 prior to any application for readmission.
The ODC filed an objection to the committee’s finding that the misconduct occurred during the same time frame as respondent’s prior discipline. It argued permanent disbarment or, in the alternative, a consecutive disbarment is appropriate under the facts.

Recommendation of the Disciplinary Board

The board adopted the committee’s factual and legal findings, with minor modifications.[4] The board concurred with the *530 committee that disbarment is appropriate under the facts. However, the board concluded much of the misconduct at issue in the instant proceedings occurred after the misconduct at issue in Guidry I and Gui-dry II, rather than during the same time period, as the committee suggested. | (Accordingly, the board recommended the disbarment imposed in the instant proceedings run consecutive to the disbarment imposed in Guidry II. The board also recommended respondent be required to account for the funds and provide payment of restitution.
Both respondent and the ODC filed an objection to the board’s findings and recommendation. Accordingly, the matter was docketed for briefing and argument in accordance with Supreme Court Rule XIX, § 11(G).
DISCUSSION

Validity of Prior Proceedings in Guidry II

In the course of oral argument before this court in the instant proceedings, respondent, for the first time, contested the validity of his prior consent disbarment in Guidry II. Essentially, respondent asserts that the ODC should have known he was incapable of consenting to disbarment due to his obvious psychological and substance abuse problems. As a result, respondent maintains the ODC should have moved to transfer him to disability inactive status pursuant to Supreme Court Rule XIX, § 22, rather than pursuing discipline.
Because this issue had not been raised previously, we directed respondent and the ODC to file supplemental briefs addressing the issue of whether respondent’s consent was vitiated at the time his consent disbarment was imposed in 1998. Upon review of those briefs, we find no support for respondent’s contentions.
The ODC points out that it was well aware of respondent’s mental state as a result of the monitoring requirements we imposed in Guidry I. The ODC relies on a letter from respondent’s treating physician in March 1997, during the period of the consent discipline negotiations, which indicates respondent was taking his medication | mfor bipolar disorder regularly and attending Alcoholics Anonymous meetings regularly. The letter further indicated respondent had been sober for approximately one year.
All of the objective evidence establishes that respondent was competent during the period he consented to disbarment in Gui-dry II and that he was aware of the consequences of entering into consent discipline. Accordingly, we reject respondent’s argument that his disbarment in Guidry II should be set aside.

Analysis of Respondent’s Misconduct

Finding no merit to respondent’s procedural arguments, we now turn to an analysis of the record. Bar disciplinary matters come within the original jurisdiction of this court. La. Const, art. V, § 5(B). Consequently, we act as triers of fact and conduct an independent review of the record to determine whether the alleged misconduct has been proven by clear and convincing evidence. In re: Quaid, 94-1316 (La.11/80/94), 646 So.2d 343, 348; Louisiana State Bar Ass’n v. Boutall, 597 So.2d 444, 445 (La.1992).
Our review of the record demonstrates the ODC proved by clear and convincing evidence the allegations of professional misconduct. Respondent engaged in a *531 pattern of accepting legal fees from his clients and taking no action in their legal matters. He refused to communicate 'with his clients, as well as intentionally failed to account for or refund their fees. Respondent converted the funds owed to third parties pursuant to attorney and medical liens, as well as converted the funds entrusted to him by Ms. Dobbins-Craig. He has engaged in the unauthorized practice of law on two occasions. Finally, he has consistently failed to cooperate with the ODC.

\uAppropriate Discipline

Having found evidence of professional misconduct, we now turn to the issue of an appropriate sanction. In determining a sanction, we are mindful that disciplinary proceedings are designed to maintain high standards of conduct, protect the public, preserve the integrity of the profession, and deter future misconduct. Louisiana State Bar Ass’n v. Reis, 513 So.2d 1173 (La.1987). The discipline to be imposed depends upon the facts of each case and the seriousness of the offenses involved, considered in light of any aggravating and mitigating circumstances. Louisiana State Bar Ass’n v. Whittington, 459 So.2d 520 (La.1984).
Respondent’s misconduct is serious. His actions have jeopardized his clients’ legal matters, and the record is replete with evidence of the actual harm his actions have caused to his clients, as well as third parties. Under such circumstances, it is clear the baseline sanction for respondent’s misconduct is disbarment.
Numerous aggravating factors are present: prior disciplinary offenses, pattern of misconduct, multiple offenses, bad faith obstruction of the disciplinary process by intentionally failing to comply with rules or orders of the disciplinary agency, vulnerability of the victims, substantial experience in the practice of law and indifference to making restitution. The only significant mitigating factor advanced by respondent is his personal or emotional problems. However, as stated earlier, the reports submitted in connection with Guidry I reveal that respondent’s psychological and substance abuse problems were largely under control at the time of the instant misconduct. Thus, while we acknowledge the existence of respondent’s pre-existing personal and emotional problems, we find little or no causal relationship between these problems and the misconduct of these proceedings.
haBased on our consideration of the aggravating and mitigating factors, we see absolutely no basis to deviate from the baseline sanction of disbarment. The only remaining question is whether respondent’s misconduct is so egregious that he should be permanently prohibited from seeking readmission.
In Appendix E to Supreme Court Rule XIX, we set forth guidelines of the type of conduct which might result in permanent disbarment. Respondent’s conduct falls under at least three of these guidelines: Guideline 1 (repeated or multiple instances of intentional conversion of client funds with substantial harm); Guideline 8 (engaging in the authorized practice of law); and Guideline 9 (instances of serious attorney when the misconduct or conviction is preceded by suspension or disbarment for prior instances of serious attorney misconduct).
Guideline 9 applies with particular force in the instant case. We gave respondent the benefit of the doubt in Guidry I when we imposed a fully-deferred suspension. Rather than learning from that experience, respondent proceeded to commit additional misconduct, which formed the basis for his disbarment in Guidry II. Even after he *532 was disbarred in Guidry II, respondent continued to commit new misconduct.[5]
The nature of the instant misconduct, coupled with respondent’s prior disciplinary record and lack of remorse, convincingly demonstrate he lacks the good moral character and fitness necessary to practice law in this state. Supreme Court Rule XVII, § 8(C). Respondent has exhibited a blatant disregard for the welfare of his clients and ignored the obligations he assumed when he took the oath as member ofjjothe bar of this state. In the face of this indisputable evidence of a fundamental lack of moral fitness, we can conceive of no circumstance under which we would grant readmission to respondent. Accordingly, he must be permanently disbarred.
DECREE
Upon review of the findings and recommendations of the hearing committee and disciplinary board, and considering the record, briefs, and oral argument, it is ordered that the name of George A. Gui-dry, Sr., Louisiana Bar Roll No. 6478, be stricken from the roll of attorneys and that his license to practice law in the State of Louisiana be revoked. Pursuant to Supreme Court Rule XIX, § 24(A), it is further ordered that respondent be permanently prohibited from being readmitted to the practice of law in this state. All costs and expenses in the matter are assessed against respondent in accordance with Supreme Court Rule XIX, § 10.1, with legal interest to commence thirty days from the date of finality of this court’s judgment until paid.

. Three other matters were also charged by the ODC, but the hearing committee found insufficient evidence to support these charges. We find no error in the dismissal of these charges. Accordingly, we will not address these matters further.

. The ODC also charged respondent with substantive misconduct arising from his representation of Ms. Bailey; however, the hearing committee found no evidence to support the allégations of substantive misconduct.

. Respondent was admitted to the practice of law in 1974, approximately twenty-three years at the time his misconduct subject of these proceedings first began.

. The board observed the committee erred in finding a violation of Rule 1.15(c), as respondent had not been charged with a violation of that rule. However, it found respondent was charged with and violated Rule 1.15(b) in *530 connection with his failure to provide payment to the Gaudin firm and the medical providers of Mr. Jones and Mr. Williams. The board also found respondent violated Rule 8.4(c) because his actions were dishonest.

. The hearing committee found that respondent’s instant misconduct occurred during the same time frame as the misconduct in Guidry II. The disciplinary board correctly rejected this finding, and properly concluded that the majority of the instant misconduct occurred outside of the time frame at issue in Guidry II. Accordingly, we decline to apply to the analysis of Louisiana State Bar Ass'n v. Chateiain, 573 So.2d 470 (La.1991).