I ,ATTORNEY DISCIPLINARY PROCEEDINGS.
PER CURIAM.*
This disciplinary matter arises from formal charges filed by the Office of Disciplinary Counsel (“ODC”) against respondent, Michael J. Matthews, a disbarred attorney.
PRIOR DISCIPLINARY HISTORY
Before we address the current charges, we find it helpful to review respondent’s prior disciplinary history. Respondent was admitted to the practice of law in Louisiana in 1975. In June 1988, respondent pleaded guilty to five counts of forgery and five counts of felony theft of client funds. See State v. Matthews, 572 So.2d 250 (La.App. 1st Cir.1990), writ denied, 575 So.2d 387 (La.1991). Following his guilty plea, respondent filed a petition for consent disbarment, which the court granted. Louisiana State Bar Ass’n v. Matthews, 532 So.2d 105 (La.1988). Re *738 spondent never sought readmission from his disbarment. Accordingly, he remains disbarred from the practice of law.
| .UNDERLYING FACTS
Count I — The Cave Matter
Following respondent’s disbarment, attorney Donald Cave employed him to work as a paralegal. At Mr. Cave’s direction, respondent attended and participated in the following depositions:[1]
1. Deposition of David Windom on April 20,1999;
2. Deposition of Michael Stein on April 20,1999;
3. Deposition of Dr. Edward Cullom, III on April 21,1999;
4. Deposition of Dr. Amilcar Correa on April 21,1999; and
5. Deposition of Jennifer Altazin on April 23,1999.
Respondent appeared at each deposition as counsel for the plaintiff and misrepresented himself by allowing others to believe he was licensed to practice law. During some of the depositions, respondent asked questions of the witnesses.
Counts II & III — The Cornish Matter
Following respondent’s disbarment, attorney John Cornish employed him to work as a paralegal.[2]
| .The Ihsan Representation
During respondent’s employment, Malik Ihsan hired Mr. Cornish to represent him in a personal injury matter. Mr. Cornish gave respondent permission to negotiate personal injury settlements, including Mr. Ihsan’s, directly with insurance adjusters.
Between June and December 1997, respondent sent four letters to the insurance adjuster handling Mr. Ihsan’s claim. In the letters, respondent failed to designate himself as a paralegal or otherwise indicate that he was not an attorney. Moreover, in his December 4, 1997 letter, respondent offered to settle Mr. Ihsan’s claim for $7,500 plus medical expenses.
Two of the insurance adjuster’s letters to respondent were addressed to “Michael J. Matthews, Attorney at Law.” In an affidavit dated June 12, 2000, the insurance adjuster stated: (1) she dealt exclusively and directly with respondent in attempting to settle the claim, (2) respondent represented to her that he was Mr. Ihsan’s attorney, and (3) respondent never disclosed to her that he did not have a license to practice law.
The White Representation
During respondent’s employment, June White hired Mr. Cornish to handle her deceased husband’s succession. In November 1996, while Mr. Cornish was out of town, respondent traveled to Alexandria to pick up a check for additional legal fees from Ms. White. Because Ms. White was under the impression respondent was an attorney, she made the $8,000 check payable to respondent with “Lawyer Fees” indicated in the check’s memo section. With Mr. Cornish’s permission, respondent deposited the check into his personal account and kept approximately $2,400 to pay |4the leases on two vehicles. Respondent wrote a check to Mr. Cornish for the difference.
*739 In November 1996, again with Mr. Cornish’s permission, respondent signed Mr. Cornish’s name as Notary to notarize the signature of the succession’s administrator on the Oath of Administrator. Furthermore, while acting as Ms. White’s legal representative, respondent dealt exclusively with a Maryland attorney regarding the ownership transfer of her husband’s franchise rights. The Maryland attorney believed respondent was an attorney and was never corrected when he addressed respondent as such. Ms. White was forced to sell the franchise for substantially less than its value partly due to respondent’s failure to respond to the Maryland attorney’s letters.
In July 1997, Ms. White fired Mr. Cornish. Her discharge letter was addressed to both Mr. Cornish and respondent.
DISCIPLINARY PROCEEDINGS:
In July 2008, the ODC filed three counts of formal charges against respondent, alleging his conduct violated the following provisions of the Rules of Professional Conduct: Rules 5.5 (engaging in the unauthorized practice of law), 8.4(a) (violation of the Rules of Professional Conduct), 8.4(c) (engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation), and 8.4(d) (engaging in conduct prejudicial to the administration of justice). Respondent, through counsel, answered the formal charges and denied any misconduct.

|5Hearing Committee Report

After reviewing the evidence presented at the hearing, the hearing committee found respondent engaged in the practice of law in the following ways: (1) he participated in several depositions on behalf of his employer’s client, (2) he negotiated with an insurance adjuster on behalf of his employer’s client, and (3) he corresponded with another attorney on behalf of his employer’s client. Based on these facts, the committee determined respondent violated the Rules of Professional Conduct as alleged in the formal charges.
The committee further determined that “Respondent (who committed prior disciplinary offenses and exhibited a pattern of misconduct) appears to have acted intentionally and knowingly with dishonest and selfish motives and appears to have violated duties owed to the public, the legal system, and the [legal] profession.”
Considering respondent’s misconduct in light of the above findings and the prior jurisprudence of this court, the committee recommended respondent be permanently disbarred. The committee further recommended that any future disciplinary complaints about respondent representing himself to be a licensed attorney should be forwarded to the appropriate district attorney’s office for investigation.
Neither respondent nor the ODC filed an objection to the hearing committee’s recommendation. However, in his brief to the disciplinary board, respondent noted the ODC waited a decade to file formal charges against him, causing a significant delay in these disciplinary proceedings. He also stated that his above actions were done at the request and direction of licensed attorneys; thus, he did not intentionally engage in any conduct he felt was the unauthorized practice of law.
| kDisciplinary Board Recommendation
After review, the disciplinary board adopted the factual conclusions drawn by the hearing committee. The board also found the ODC proved, by clear and convincing evidence, that respondent engaged in the unauthorized practiced of law while disbarred, as described in the three counts of formal charges. Based on these facts, the board determined respondent violated Rules 5.5(a), 8.4(a), 8.4(c), and 8.4(d) of the Rules of Professional Conduct.
*740 The board further determined respondent knowingly and intentionally violated duties owed to his purported clients, the legal system, and the legal profession. The level of his involvement in representing clients was not superficial, and he caused “substantial and serious” harm.
In aggravation, the board found prior disciplinary offenses, a dishonest or selfish motive, and a pattern of misconduct. The board found no mitigating factors present.
Turning to the issue of an appropriate sanction, the board stated, “While the record reflects that licensed attorneys who should have supervised [respondent] have also shared significant blame, the Board finds that Mr. Matthews used his employment as a legal assistant as a platform for seizing opportunities to practice without a license.” After further considering respondent’s misconduct in light of the permanent disbarment guidelines and the pri- or jurisprudence of this court, the board recommended respondent be permanently disbarred. The board further recommended respondent be ordered to make restitution to Ms. White and “make restitution for any other monetary harm suffered by his other purported clients and/or by third parties as the result of his unauthorized practice of law.”
|7Neither respondent nor the ODC filed an objection to the disciplinary board’s recommendation.
DISCUSSION
Bar disciplinary matters fall within the original jurisdiction of this court. La. Const, art. V, § 5(B). Consequently, we act as triers of fact and conduct an independent review of the record to determine whether the alleged misconduct has been proven by clear and convincing evidence. In re: Banks, 09-1212 (La.10/2/09), 18 So.3d 57. While we are not bound in any way by the findings and recommendations of the hearing committee and disciplinary board, we have held the manifest error standard is applicable to the committee’s factual findings. See In re: Caulfield, 96-1401 (La.11/25/96), 683 So.2d 714; In re: Pardue, 93-2865 (La.3/11/94), 633 So.2d 150.
In this matter, respondent engaged in the unauthorized practice of law on numerous occasions following his 1988 disbarment. The record supports a finding that he has violated the Rules of Professional Conduct as charged.
Having found evidence of professional misconduct, we now turn to a determination of the appropriate sanction for respondent’s actions. In determining a sanction, we are mindful that disciplinary proceedings are designed to maintain high standards of conduct, protect the public, preserve the integrity of the profession, and deter future misconduct. Louisiana State Bar Ass’n v. Reis, 513 So.2d 1173 (La.1987). The discipline to be imposed depends upon the facts of each case and the seriousness of the offenses involved considered in light of any aggravating and mitigating circumstances. Louisiana State Bar Ass’n v. Whittington, 459 So.2d 520 (La.1984).
|sWe agree with the hearing committee and the disciplinary board that respondent acted knowingly and intentionally. He violated duties owed to his employers’ clients, the public, the legal system, and the legal profession. His misconduct caused actual harm and potentially serious harm.
The record supports the following aggravating factors: prior disciplinary offenses, a dishonest or selfish motive, a pattern of misconduct, multiple offenses, and refusal to acknowledge the wrongful nature of the conduct. The sole mitigating factor present is the delay in the disciplinary proceedings.
*741 Turning to the issue of an appropriate sanction, we find respondent’s conduct falls squarely within Guidelines 8 and 9 of the permanent disbarment guidelines. These guidelines provide as follows:
GUIDELINE 8. Following notice, engaging in the unauthorized practice of law subsequent to resigning from the Bar Association, or during the period of time in which the lawyer is suspended from the practice of law or disbarred.
GUIDELINE 9. Instances of serious attorney misconduct or conviction of a serious crime, when the misconduct or conviction is preceded by suspension or disbarment for prior instances of serious attorney misconduct or conviction of a serious crime. Serious crime is defined in Rule XIX, Section 19. Serious attorney misconduct is defined for purposes of these guidelines as any misconduct which results in a suspension of more than one year.
The record reveals respondent acted as an attorney on numerous occasions while disbarred, thereby implicating Guideline 8. Likewise, Guideline 9 is applicable, as the instant misconduct, which is unquestionably serious attorney misconduct, was preceded by respondent’s disbarment for prior instances of serious attorney misconduct. Respondent’s argument that he was acting at the request and direction of licensed attorneys only serves to exacerbate his misconduct, as the two attorneys who facilitated his unauthorized practice of law were subsequently disciplined for them role in his misconduct.
[¡¡This matter is quite similar to In re: Jackson, 08-2424 (La.2/13/09), 1 So.3d 454. In Jackson, a suspended attorney engaged in the unauthorized practice of law by providing legal advice to clients and by negotiating settlements with insurance adjusters. The suspended attorney also shared legal fees with a licensed attorney who assigned files to the suspended attorney, allowing him to engage in the unauthorized practice of law.[3] We permanently disbarred the suspended attorney based on Guidelines 8 and 9.
In In re: Jefferson, 04-0239 (La.6/18/04), 878 So.2d 503, we addressed another case in which a disbarred attorney engaged in the unauthorized practice of law. In concluding the attorney must be permanently disbarred, we stated:
Respondent has flouted the authority of this court by practicing law after being prohibited from doing so. In the face of this indisputable evidence of a fundamental lack of moral character and fitness, we can conceive of no circumstance under which we would ever grant readmission to respondent. Accordingly, he must be permanently disbarred.
Similarly, in the instant case, respondent’s failure to respect the authority of this court clearly demonstrates he lacks the fitness to engage in the practice of law in this State. Accordingly, he must be permanently disbarred.
DECREE
Upon review of the findings and recommendations of the hearing committee and disciplinary board, and considering the record, it is ordered that the name of Michael J. Matthews, Louisiana Bar Roll number 7529, be stricken from the roll of attorneys and that his license to practice law in the State of Louisiana be revoked. | ¡¡¡Pursuant to Supreme Court Rule XIX, § 24(A), it is further ordered that respondent be permanently prohibited from be *742 ing readmitted to the practice of law in this state. It is further ordered that respondent make restitution to his victims. All costs and expenses in the matter are assessed against respondent in accordance with Supreme Court Rule XIX, § 10.1, with legal interest to commence thirty days from the date of finality of this court’s judgment until paid.

 Chief Justice Kimball not participating in the opinion.

. In January 2003, the disciplinary board publicly reprimanded Mr. Cave for failing to properly supervise respondent and facilitating his unauthorized practice of law. In re: Cave, 02-DB-020 (1/21/03).

. In December 2004, this court suspended Mr. Cornish for three years, but deferred all but one year and one day of the suspension, for, among other things, failing to properly supervise respondent and facilitating his unauthorized practice of law. In re: Comish, 04-1453 (La.12/13/04), 889 So.2d 236.

. The licensed attorney consented to being permanently disbarred for, among other things, improperly sharing attorney’s fees with the suspended attorney in Jackson and facilitating the suspended attorney's unauthorized practice of law. In re: Wilson, 04-1734 (La.9/24/04), 882 So.2d 547.