ON APPLICATION FOR ADMISSION TO THE BAR
 

 PER CURIAM
 
 *
 

 |,In this matter, petitioner, Marcia Denise Jordan, reapplies for admission to the bar after three previous denials. For the reasons set forth, we again deny her application, and we shall permanently prohibit her from reapplying in the future.
 

 UNDERLYING FACTS AND PROCEDURAL HISTORY
 

 Petitioner enrolled in law school in 1993. During the 1995-96 academic year, petitioner, then a third-year law student, served as president of the Student Bar Association (“SBA”). Petitioner graduated from law school in May 1996, and thereafter she successfully passed the February 1997 Louisiana bar examination. However, on April 17, 1997, the day before the admissions ceremony, petitioner’s law
 
 *684
 
 school rescinded her Dean’s Certifícate
 
 [1]
 
 in the wake of allegations that she had embezzled student funds during her tenure as SBA president. Without a Dean’s Certificate, petitioner was no longer eligible for admission to the bar, and accordingly, the Committee on Bar Admissions (“Committee”) filed a motion in this court seeking to withdraw its certification of petitioner for admission. This court granted the motion and thereafter appointed a commissioner to take character and fitness evidence.
 

 ^Following the proceedings before the commissioner, we determined that petitioner had misappropriated or converted student and SBA funds to her own use. The record also revealed that after the law school began its investigation into petitioner’s SBA activities, she destroyed the financial records in her possession relating to her tenure on the SBA. She also failed to cooperate with the investigation and forged the signature of her attorney on a letter directing her bank not to comply with a subpoena issued by the law school. After considering these facts, we denied petitioner’s first application for admission in
 
 In re: Jordan,
 
 97-1564 (La.2/12/99), 730 So.2d 873
 
 (“Jordan I”).
 

 In 2000, petitioner filed a second application for admission. In that matter, petitioner essentially re-argued the Loyola incident, and thus raised the same issues we had considered and rejected in
 
 Jordan I.
 
 Accordingly, on December 15, 2000, we denied petitioner’s application for admission, and stated that she could “reapply only upon a showing of changed circumstances or evidence not previously submitted to this court warranting our reconsideration of the order rendered in”
 
 Jordan I. In re: Jordan,
 
 00-3006 (La.12/15/00), 775 So.2d 1065
 
 (“Jordan II
 
 ”).
 

 In 2004, petitioner filed her third application for admission to the practice of law. Petitioner argued that she had demonstrated a significant change in circumstances since our prior decisions denying admission, including her payment of “remuneration” to the law school, following which the law school issued a new Dean’s Certificate in 2003.
 

 In response to petitioner’s third application, we transferred the matter to the Office of Disciplinary Counsel (“ODC”) for investigation and appointed a commissioner to take character and fitness evidence. The commissioner conducted a hearing and thereafter recommended that petitioner be admitted to the bar. The Committee filed an objection to the commissioner’s recommendation, and accordingly, the case was set on the docket for oral argument.
 

 | oDuring oral argument, questions were raised whether petitioner had engaged in the unauthorized practice of law and/or had improperly shared the attorney’s fees paid to New Orleans attorney Richard Garrett, the lawyer for whom she was then working as a legal assistant. Because these issues were not addressed in the commissioner’s report, we remanded the matter for a supplemental hearing before the commissioner to consider the fee sharing issue and “any other matter that is germane to petitioner’s good moral character and fitness to practice law.” Following the supplemental hearing, the commissioner filed his report with this court, recommending that petitioner be denied admission to the bar because she engaged in the unauthorized practice of law and participated in a fee-sharing arrangement pro
 
 *685
 
 hibited by the Rules of Professional Conduct.
 

 Meanwhile, the ODC had instituted disciplinary proceedings against Mr. Garrett, alleging that he facilitated petitioner’s unauthorized practice of law and improperly shared attorney’s fees with her. On May 5, 2009, we unanimously ordered that Mr. Garrett be disbarred for this conduct.
 
 In re: Garrett,
 
 08-2513 (La.5/5/09), 12 So.3d 332. On the same date, we unanimously denied petitioner’s application for admission to the practice of law, finding that she had negotiated personal injury settlements on behalf of Mr. Garrett’s clients, represented the clients during recorded statements taken by insurance companies, and entered into an impermissible fee sharing arrangement with Mr. Garrett.
 
 In re: Jordan,
 
 04-0542 (La.5/5/09), 12 So.3d 346
 
 (“Jordan III”).
 
 Rehearing applications filed by both Mr. Garrett and petitioner were denied on June 19, 2009.
 

 Petitioner now reapplies to this court for admission.
 

 DISCUSSION
 

 Three years ago, we rendered our most recent judgment denying petitioner admission to the bar. At that time, we were confronted with evidence ^demonstrating that petitioner had repeatedly engaged in the unauthorized practice of law and had entered into an improper agreement to share the legal fees paid to her then-employer, Richard Garrett. This conduct began in 1999 and did not cease until 2006, when the ODC filed formal charges against Mr. Garrett. In addition, it is undisputed that petitioner committed serious misconduct when she was the president of her law school’s SBA and during the investigation of her conduct conducted by the first commissioner this court appointed to take character and fitness evidence. Standing alone, the unauthorized practice of law conclusively demonstrates that petitioner lacks the moral fitness to be admitted to the bar.
 
 [2]
 
 The improper fee-sharing and the conduct arising out of
 
 *686
 
 the incident in law school simply serve to underscore the conclusion that petitioner possesses serious and fundamental character flaws.
 

 Given the egregious nature of petitioner’s wrongdoing, as well as her pattern of conduct occurring over many years, we can conceive of no circumstance under which we would ever grant her admission to the practice of law in this state. | -Accordingly, we will deny her application for admission. Furthermore, no applications for admission will be accepted from petitioner in the future.
 

 DECREE
 

 After reviewing the evidence and considering the law, we conclude that petitioner has failed to meet her burden of proving that she has good moral character and fitness to practice law. See Supreme Court Rule XVII, § 5(D). Accordingly, it is ordered that the application for admission be denied. Pursuant to Supreme Court Rule XVII, § 9(D)(13), we hereby order that petitioner shall be permanently precluded from seeking admission in the future.
 

 ADMISSION DENIED.
 

 *
 

 Chief Justice Kimball not participating in the opinion.
 

 [1]
 

 . Pursuant to Supreme Court Rule XVII, § 3(E), a written certification of graduation and fitness to practice law is required of all applicants for admission to the bar. Such a certificate must be issued by the dean or chancellor of the law school from which the applicant graduated, and hence is commonly referred to as a "Dean’s Certificate.”
 

 [2]
 

 . This court routinely denies admission to bar applicants who were found to have engaged in conduct constituting the unauthorized practice of law.
 
 See, e.g., In re: Leon A. Maryland,
 
 09-2470 (La.4/5/10), 32 So.3d 219;
 
 In re: Carleen Vincent Maryland,
 
 03-1173 (La.9/24/04), 882 So.2d 548;
 
 In re: Woodard,
 
 01-1281 (La.12/14/01), 803 So.2d 969;
 
 In re: Baylis,
 
 99-2903 (La.12/15/00), 775 So.2d 1065;
 
 In re: Silva,
 
 97-1004 (La.12/1/98), 721 So.2d 893.
 

 In addition, the unauthorized practice of law by a suspended or disbarred attorney has resulted in the permanent disbarment of numerous Louisiana attorneys.
 
 See In re: Calahan,
 
 10-2729 (La.2/11/11), 55 So.3d 782;
 
 In re: Hammond,
 
 10-0419 (La.1/19/11), 56 So.3d 199;
 
 In re: Petal,
 
 10-0080 (La.3/26/10), 30 So.3d 728;
 
 In re: Matthews,
 
 09-2416 (La.3/26/10), 30 So.3d 737;
 
 In re: Cofield,
 
 09-2203 (La. 1/29/10), 26 So.3d 729;
 
 In re: Engolio,
 
 09-0193 (La.5/5/09), 7 So.3d 1162;
 
 In re: Jackson,
 
 08-2424 (La.2/13/09), 1 So.3d 454;
 
 In re: LaNasa,
 
 08-2294 (La. 1/9/09), 998 So.2d 73;
 
 In re: Lindsay,
 
 07-1813 (La.3/7/08), 976 So.2d 1261;
 
 In re: Thomas,
 
 07-1616 (La.1/16/08), 973 So.2d 686;
 
 In re: Patrick,
 
 07-1222 (La.12/14/07), 970 So.2d 964;
 
 In re: Williams,
 
 07-0504 (La.10/26/07), 967 So.2d 1141;
 
 In re: Brown,
 
 06-1893 (La.9/15/06), 937 So.2d 844;
 
 In re: Melton,
 
 05-0409 (La.6/17/05), 905 So.2d 281;
 
 In re: Dyer,
 
 05-0522 (La.4/29/05), 900 So.2d 824;
 
 In re: Yaeger,
 
 05-0035 (La.3/18/05), 897 So.2d 571;
 
 In re: Armant,
 
 04-2232 (La.11/19/04), 888 So.2d 768;
 
 In re: Wilson,
 
 04-1734 (La.9/24/04), 882 So.2d 547;
 
 In re: Martin,
 
 04-0444 (La.9/3/04), 883 So.2d 392;
 
 In re: Jefferson,
 
 04-0239 (La.6/18/04), 878 So.2d 503;
 
 In re: Gros,
 
 03-3076 (La.4/23/04), 871 So.2d 1091;
 
 In re: Quaid,
 
 03-1876 (La.10/31/03), 865 So.2d 28;
 
 In re: Lewis,
 
 03-1245 (La.10/3/03), 856 So.2d 1191;
 
 In re: Gibson,
 
 03-0582 (La.9/26/03), 856 So.2d 1173;
 
 In re: Crittenden,
 
 03-0321 (La.9/5/03), 854 So.2d 318;
 
 In re: Guidry,
 
 02-3006 (La.6/27/03), 849 So.2d 525;
 
 In re: Wyche,
 
 02-2800 (La.6/20/03), 849 So.2d 508;
 
 In re: Crawford,
 
 02-2680 (La.4/21/03), 843 So.2d 1091;
 
 In re: Caver,
 
 03-0653 (La.3/28/03), 841 So.2d 770;
 
 In re: Hilbum,
 
 01-2330
 
 *686
 
 (La.1/24/03), 840 So.2d 471;
 
 In re: Elbert,
 
 01-2345 (La.1/24/03), 840 So.2d 494.