*1192 ATTORNEY DISCIPLINARY PROCEEDINGS
I,PER CURIAM.
This disciplinary matter arises from two sets of formal charges filed by the Office of Disciplinary Counsel (“ODC”) against respondent, Keith A. Lewis. Respondent has been disbarred since January 1999, based on charges unrelated to the instant matter. In re: Lewis, 98-2825 (La.1/29/99), 728 So.2d 846 (“Lewis I”).[1]
*1193 UNDERLYING FACTS

01-DB-027

The Blue Matter

In October 1998, Alice Blue retained respondent to handle a personal injury claim arising out of an automobile accident. On January 12, 1999, respondent filed suit on his client’s behalf. Ms. Blue then filed for protection under Chapter 7 of the Bankruptcy Code. On January 19,1999, all of Ms. Blue’s assets, including her pending personal injury claim, were transferred to a bankruptcy trustee by operation of law. The trustee assigned to Ms. Blue’s case, Cynthia Traina, attempted to communicate with respondent on numerous occasions, to no avail. As a result, Ms. Traina retained attorney Sean Alfortish to handle the matter. Mr. Alfortish subsequently learned that in April 1999, respondent had settled Ms. Blue’s personal |2injury case for the sum of $12,000.[2] Respondent did not have the authority of the bankruptcy trustee to settle the case, nor had he obtained the approval of the bankruptcy court to do so. Furthermore, respondent had continued to represent Ms. Blue after his disbarment in Lewis I became final on February 12, 1999.

01-DB-081

The Benjamin Matter

In April 1998, Thomas Benjamin, Jr. retained respondent to handle a criminal appeal on behalf of his brother, Robert Benjamin. Mr. Thomas Benjamin paid respondent $3,000 and provided him with a copy of the transcript of his brother’s trial. Respondent performed no work on the case and failed to communicate with Mr. Thomas Benjamin and Mr. Robert Benjamin. Mr. Thomas Benjamin subsequently sought the representation of another attorney and requested that respondent return the trial transcript. Respondent did not return the transcript until Mr. Thomas Benjamin filed a complaint with the ODC in June 2000.
On July 24, 2000, the ODC forwarded a copy of the complaint to respondent by certified mail. Respondent failed to reply to the complaint. On September 28, 2000, the ODC forwarded a second copy of the complaint to respondent by certified and regular United States mail. Respondent again failed to reply to the complaint. The ODC thereafter served respondent with a subpoena compelling him to appear on January 25, 2001 and answer the complaint under oath. Respondent failed to appear.
I ¡¡DISCIPLINARY PROCEEDINGS
On March 8, 2001, the ODC filed one count of formal charges against respondent in 01-DB-027, alleging that his conduct in the Blue matter violated the following provisions of the Louisiana Rules of Professional Conduct; Rules 1.15 (safekeeping property of a client or third person), 4.1(b) (failure to disclose a material fact to a third person), 5.5(a) (engaging in the unauthorized practice of law), 8.1(a) (knowingly making a false statement of material fact), 8.4(a) (violation of the Rules of Professional Conduct), 8.4(c) (engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation), and 8.4(d) (en *1194 gaging in conduct prejudicial to the administration of justice).
On July 26, 2001, the ODC filed two counts of formal charges against respondent in 01-DB-081, alleging that his conduct in the Benjamin matter violated the following provisions of the Louisiana Rules of Professional Conduct: Rules 1.3 (failure to act with reasonable diligence and promptness in representing a client), 1.4 (failure to communicate with a client), 1.5 (fee arrangements), 1.15, 8.1(b) (knowing failure to respond to a lawful demand for information from a disciplinary authority), 8.1(c) (failure to cooperate with the ODC in its investigation), 8.4(a), 8.4(c), 8.4(d), and 8.4(g) (failure to cooperate with the ODC in its investigation).
The two sets of formal charges were consolidated by order of the hearing committee chairman on April 9, 2002. Respondent answered the formal charges and denied any misconduct. Accordingly, the matter proceeded to a formal hearing on the merits, which was conducted on September 6, 2002. Despite notice, respondent did not appear at the hearing.
| AHearing Committee Recommendation
At the hearing, the ODC called six witnesses to testify in person and introduced 24 exhibits. The hearing committee heard the testimony of Alice Blue, Cynthia Traí-na, Sean Alfortish, and David Knight (the attorney for GEICO) in connection with the Blue matter, and Thomas Benjamin, Jr. and Jacquelyn Boyd (Mr. Benjamin’s sister) in connection with the Benjamin matter. Based upon the record, the hearing committee made the following detailed factual findings:
The Blue matter: Respondent was disbarred effective February 12, 1999. Prior to his disbarment, he was hired by Ms. Alice Blue to represent her in connection with injuries she sustained in an automobile accident in 1998. Respondent filed suit on Ms. Blue’s behalf on January 12, 1999. He did not communicate to Ms. Blue that he had been disbarred, and in fact, continued to represent her after his disbarment became final. Ms. Blue subsequently filed a Chapter 7 bankruptcy. Ms. Cynthia Traína, the bankruptcy trustee assigned to Ms. Blue’s case, testified that she attempted on numerous occasions to discuss Ms. Blue’s bankruptcy proceedings with respondent, but other than one communication, her efforts failed. Ms. Traína subsequently hired attorney Sean Alfortish to handle Ms. Blue’s bankruptcy interests. Mr. Alfortish testified that he searched the records of the Civil District Court for the Parish of Orleans and learned that Ms. Blue’s case had been settled in April of 1999, without authority from the bankruptcy trustee and without approval from the bankruptcy court. Two checks were issued, one in the amount of $10,990, dated April 19, 1999, and payable to Ms. Blue and to respondent. Ms. Blue testified that respondent met her at her home in April and thereafter drove her to his bank (Bank One), where he had her endorse the settlement check and sign the release documents. Evidence produced at the hearing showed that the entire amount was deposited into respondent’s personal |Rbank account. Ms. Blue testified that she knew she was not entitled to any of the settlement funds because of her bankruptcy, and respondent told her he was going to remit the funds to the bankruptcy court.[3] However, the bankruptcy court did not receive any of the settlement funds.
The Benjamin matter: Respondent was hired in 1998 to prosecute an appeal on behalf of Robert Benjamin, who had been convicted of multiple felonies. Jacquelyn *1195 Boyd, Mr. Benjamin’s sister, testified that she met with respondent on two occasions, each time giving him a $500 check from another of her brothers, Thomas Benjamin, Jr. However, she testified that she had recently suffered a stroke and could not remember all of the details of the transactions with respondent. Thomas Benjamin, Jr. testified that he obtained four cashier’s checks (two for $1,000 each and two for $500 each) payable to respondent. He personally gave a $1,000 cashier’s check to respondent, and the other three checks were given to respondent by his sister (Ms. Boyd). Copies of only two checks were produced at the hearing, each payable to respondent in the amount of $500, and each signed by Thomas Benjamin, Jr. Both Mr. Benjamin and Ms. Boyd testified that respondent obtained a copy of the trial transcript but thereafter did no work to prosecute the appeal. Ms. Boyd was able, after several attempts, to obtain the transcript from respondent, and she hired another attorney to prosecute the appeal.
Based on these factual findings, the committee determined that respondent engaged in the practice of law after being disbarred; appropriated his clients’ funds and/or the bankruptcy creditors’ funds for his own use and benefit and has never made restitution; accepted a legal fee, following which he did not perform any legal services on his behalf of his client; failed to refund the legal fee or any portion of it; |fiand exhibited an utter disregard for the disciplinary system by failing to respond to formal charges, failing to obey a subpoena, and failing to appear at his own hearing. For this misconduct, the committee recommended that respondent be permanently disbarred. The committee also recommended that respondent be ordered to make restitution to the bankruptcy estate of Alice Blue and to Thomas Benjamin, Jr.
Neither respondent nor the ODC objected to the hearing committee’s recommendation.

Disciplinary Board Recommendation

The disciplinary board concurred in the hearing committee’s factual findings and determined that respondent violated the Rules of Professional Conduct as charged. Respondent intentionally violated duties owed to his clients, the public, and to the profession. Respondent deprived Ms. Blue’s creditors of the proceeds of her personal injury settlement ($10,990) and deprived Mr. Benjamin of the legal fee he paid ($8,000). The public was harmed by respondent’s unauthorized practice of law. Finally, the ODC spent many fruitless hours trying to locate and serve respondent. The board determined the baseline sanction for respondent’s misconduct is disbarment.
In aggravation, the board recognized respondent’s prior disciplinary offenses, dishonest or selfish motive, pattern of misconduct, multiple offenses, bad faith obstruction of the disciplinary proceeding, refusal to acknowledge the wrongful nature of the conduct, -vulnerability of the victims, and substantial experience in the practice of law (admitted 1984). The board found the record does not support the presence of any mitigating factors.
|7In light of these considerations, the ABA’s Standards for Imposing Lawyer Sanctions, and the prior jurisprudence, the board found that disbarment is an appropriate sanction. However, recognizing that respondent engaged in the unauthorized practice of law after being disbarred, the board agreed that the sanction of permanent disbarment is warranted. The board also recommended respondent be ordered to make restitution to the bankruptcy estate of Alice Blue and to Thomas Benjamin, Jr., and that he be assessed with all costs and expenses of *1196 these proceedings, with legal interest to commence running thirty days from the date of finality of the court’s judgment until paid.
Neither respondent nor the ODC objected to the disciplinary board’s recommendation.
DISCUSSION
Bar disciplinary matters come within the original jurisdiction of this court. La. Const, art. V, § 5(B). Consequently, we act as triers of fact and conduct an independent review of the record to determine whether the alleged misconduct has been proven by clear and convincing evidence. In re: Quaid, 94-1316 (La.11/30/94), 646 So.2d 343; Louisiana State Bar Ass’n v. Boutall, 597 So.2d 444 (La.1992). While we are not bound in any way by the findings and recommendations of the hearing committee and disciplinary board, we have held the manifest error standard is applicable to the committee’s factual findings. See In re: Caulfield, 96-1401 (La.11/25/96), 683 So.2d 714; In re: Pardue, 93-2865 (La.3/11/94), 633 So.2d 150.
The record supports the detailed findings of the hearing committee. Respondent fraudulently settled a personal injury claim on behalf of a client in bankruptcy and then converted the settlement to his own use. He failed to |scommunicate with his clients, neglected a legal matter, failed to account for and refund an unearned legal fee, and failed to cooperate with the ODC. Most significantly, some of this misconduct occurred after respondent’s disbarment in Lewis I, as respondent continued to practice law in defiance of this court’s judgment.[4]
Having found evidence of professional misconduct, we now turn to a determination of the appropriate sanction for respondent’s actions. In determining a sanction, we are mindful that disciplinary proceedings are designed to maintain high standards of conduct, protect the public, preserve the integrity of the profession, and deter future misconduct. Louisiana State Bar Ass’n v. Reis, 513 So.2d 1173 (La.1987). The discipline to be imposed depends upon the facts of each case and the seriousness of the offenses involved, considered in light of any aggravating and mitigating circumstances. Louisiana State Bar Ass’n v. Whittington, 459 So.2d 520 (La.1984).
Respondent’s conduct clearly violated duties owed to the public, the legal system, and the profession. Unquestionably, the baseline sanction for such misconduct is disbarment. Numerous aggravating factors are present, including prior disciplinary offenses, dishonest or selfish motive, a pattern of misconduct, multiple offenses, bad faith obstruction of the disciplinary proceeding, refusal to acknowledge the wrongful nature of the conduct, vulnerability of the victims, and substantial experience in the practice of law. We are unable to determine any mitigating factors from the record.
| (¡Having found disbarment is the appropriate sanction, the sole remaining issue presented for our consideration is whether respondent’s conduct is so egregious that respondent should be permanently prohibited from seeking readmission to the practice of law.
*1197 In Appendix E to Supreme Court Rule XIX, we set forth guidelines illustrating the types of conduct which might warrant permanent disbarment. While these guidelines are not intended to bind this court in its decision-making process, they present useful information concerning the types of conduct we might consider worthy of permanent disbarment.
For purposes of the instant case, Guidelines 8 and 9 are relevant. Those guidelines detail the following conduct:
GUIDELINE 8. Following notice, engaging in the unauthorized practice of law subsequent to resigning from the Bar Association, or during the period of time in which the lawyer is suspended from the practice of law or disbarred.
GUIDELINE 9. Instances of serious attorney misconduct or conviction of a serious crime, when the misconduct or conviction is preceded by suspension or disbarment for prior instances of serious attorney misconduct or conviction of a serious crime. Serious crime is defined in Rule XIX, Section 19. Serious attorney misconduct is defined for purposes of these guidelines as any misconduct which results in a suspension of more than one year.
Guideline 8 is clearly applicable to this case, as the undisputed evidence shows respondent continued to represent clients after his license to practice law was revoked by this court in Lewis I. Likewise, Guideline 9 is implicated, as the instant misconduct, which is unquestionably serious attorney misconduct, was preceded by respondent’s disbarment for prior instances of serious attorney misconduct.
ImWe do not lightly impose the sanction of permanent disbarment. In re: Morphis, 01-2803 (La.12/4/02), 831 So.2d 934. Nonetheless, we are firmly convinced that we would be remiss in our constitutional duty to regulate the practice of law if we did not impose that sanction here. Respondent engaged in conduct that was actively intended to frustrate the administration of justice. This court cannot and will not tolerate such conduct by an attorney. Respondent’s actions convincingly demonstrate he does not possess the requisite moral fitness to practice law in this state. He must be permanently disbarred.
Accordingly, we will accept the disciplinary board’s recommendation and impose permanent disbarment.
DECREE
Upon review of the findings and recommendations of the hearing committee and disciplinary board, and considering the record, it is ordered that Keith A. Lewis be permanently disbarred. Pursuant to Supreme Court Rule XIX, § 24(A), it is further ordered that respondent be permanently prohibited from being readmitted to the practice of law in this state. Respondent is ordered to pay restitution of $10,990 to the bankruptcy estate of Alice Blue and $3,000 to Thomas Benjamin, Jr. All costs and expenses in the matter are assessed against respondent in accordance with Supreme Court Rule XIX, § 10.1, with legal interest to commence thirty days from the date of finality of this court’s judgment until paid.

. The charges in Lewis I involved respondent’s failure to communicate with his clients, failure to account for settlement funds, commingling and converting client funds, failure to pay third-party medical providers, forging his clients’ endorsements on settlement checks, and failure to cooperate with the ODC.

. On April 19, 1999, the defendant insurer, GEICO, issued two separate checks in connection with the settlement of Ms. Blue’s claim. One check was issued in the amount of $10,990 and payable to Ms. Blue and respondent, "her attorney of record”; the second was issued in the amount of $1,010 and payable to Ms. Blue and a third-party medical provider. Both Ms. Blue and respondent endorsed the $10,990 check, and respondent deposited it into his personal checking account at Bank One on April 30, 1999. GEI-CO was apparently able to stop payment on the second check.

. Respondent did write Ms. Blue a personal check for $400 to cover “personal expenses.”

. At first glance, it might appear the approach of Louisiana State Bar Ass’n v. Chatelain, 573 So.2d 470 (La.1991), is appropriate, as some of the instant misconduct occurred prior to this court's 1999 opinion in Lewis I. However, a close examination of Lewis I reveals the misconduct in that case occurred in the 1993-1994 time period, far removed from the misconduct in the instant case, which occurred in 1998-2000.