*769 ATTORNEY DISCIPLINARY PROCEEDINGS
hPER CURIAM.
This disciplinary matter arises from formal charges filed by the Office of Disciplinary Counsel (“ODC”) against respondent, William G. Armant, an attorney licensed to practice law in Louisiana but currently on interim suspension.
PRIOR DISCIPLINARY HISTORY
Before we address the current charges, we find it helpful to review respondent’s prior disciplinary and ineligibility history. Respondent was admitted to the practice of law in Louisiana in 1992. Three years later, in 1995, respondent was disciplined for the first time, in the form of an admonition by the disciplinary board for incompetence, neglect of a legal matter, and failure to communicate with his client. In 1997, respondent was again admonished by the disciplinary board for neglect of legal matters and failure to communicate with his client.
On July 5, 2001, this court ordered that respondent be placed on interim suspension pursuant to a joint motion filed by respondent and the ODC. In re: Armant, 01-1918 (La.7/5/01), 791 So.2d 631. Thereafter, respondent filed a petition for consent discipline with this court. The petition proposed that respondent be disbarred from the practice of law for his substantial pattern of misconduct, including neglect of legal matters, failure to communicate with his clients, failure to protect his clients’ interests upon termination of the representation, engaging in conduct | ^involving dishonesty, fraud, deceit, or misrepresentation, commingling and converting client and third-party funds, and failure to cooperate with the ODC. We rejected the petition for consent discipline and remanded the matter for further proceedings. In re: Armant, 01-3004 (La.4/24/02), 814 So.2d 1289.
Having considered the background of respondent’s prior disciplinary infractions we now turn to an examination of the current charges against him.[1]
*770 UNDERLYING FACTS
The ODC filed two sets of formal charges against respondent. The first set of formal charges bears the disciplinary board’s docket number 02-DB-042 and consists of a consolidation of the three sets of formal charges subject of respondent’s previous petition for consent discipline as follows: 00-DB-077 filed on June 19, 2000 and encompassing twenty counts of misconduct, 00-DB-136 filed on November 6, 2000 and encompassing one count of misconduct, and 01-DB-022 filed on February 12, 2001 and encompassing two counts of misconduct. The second set of formal charges bears the disciplinary board’s docket number 02-DB-105, consists of eleven counts of misconduct, and was filed on October 17, 2002. The two sets of charges were heard by different hearing-committees before being consolidated by an order of the chair of the disciplinary board adjudicative committee on April 15, 2004.

00-DB-077/02-DB-0U2

| xCount I — The Roberts Matter
In August 1997, Todd Roberts retained respondent to handle a personal injury matter. Respondent failed to adequately communicate with Mr. Roberts, ignoring his telephone messages and certified mail, and failed to keep Mr. Roberts advised of the status of his case.
After Mr. Roberts filed a complaint against respondent with the ODC in June 1999, respondent stated he would contact Mr. Roberts to apologize and “rectify his concern.” Nevertheless, respondent failed to do so.
Count II — The Barrett Chiropractic Clinic Matter
Respondent represented eight personal injury clients who were referred to Barrett Chiropractic Clinic for medical treatment in 1993 and 1994. The clinic provided respondent with a notice of health care provider privilege in each case. Nevertheless, respondent failed to pay the clinic medical expenses totaling $11,723 on behalf of these clients and would not respond to numerous requests regarding same.
The clinic filed a complaint against respondent with the ODC in July 1998. In August 1998, respondent advised the clinic that these funds were in his escrow account and that he would forward the money right away. In his sworn statement taken in July 1999, respondent agreed to pay the clinic within thirty days. Respondent failed to do so, but he ultimately paid a negotiated reduced amount of approximately $9,000 in March 2000.
Count III — The Allen Matter
j4In April or May 1997, Youlanda Allen retained respondent to handle a personal injury matter. Respondent failed to adequately communicate with Ms. Allen and failed to keep her advised of the progress of her case, other than to say that it was “in litigation.”
In April 1999, Ms. Allen terminated respondent’s representation. Ms. Allen was thereafter informed by the insurance company involved in the matter that they had never received a petition in her case. When she contacted respondent’s office regarding same, she was informed by his staff that they were unable to locate a petition in her file.
*771 In July 1999, Ms. Allen filed a complaint against respondent with the ODC. Respondent failed to cooperate in the ODC’s investigation of the complaint.

Count IV— The Thomas Matter

In October 1997, Shirley Thomas retained respondent to handle three charges pending against her in municipal court and to file suit on her behalf in civil court. Respondent failed to adequately communicate with Ms. Thomas and failed to comply with her request for the return of her file.
In April 1999, Ms. Thomas filed a complaint against respondent with the ODC. Respondent failed to cooperate in the ODC’s investigation of the complaint. He did, however, give a sworn statement, in which he asserted that he had no record of representing Ms. Thomas in the civil matter. Thereafter, the ODC confirmed that respondent wrote letters of representation on behalf of Ms. Thomas.'
Count V — The Cantrell Matter
|KIn May 1996, Sheila Cantrell paid respondent $750 to represent her in a property settlement matter. Respondent failed to adequately communicate with Ms. Cantrell and did not pursue her legal matter. When she terminated his representation in June 1997, he failed to comply with her request for a refund of the fee she paid him. He also failed to provide her with an accounting.
Ms. Cantrell filed a complaint against respondent with the ODC in August 1997. Respondent failed to cooperate with'the ODC in its investigation of the complaint.
Count VI — The Eugene Matter
In 1996, Adrien Eugene retained respondent to represent him in a product dispute matter. Subsequently, Mr. Eugene was sued and served with a judgment debtor rule. Mr. Eugene tried to contact respondent on several occasions, even sending him a letter by facsimile requesting that his file be returned to him but to no avail. Furthermore, despite being served with a notice of a motion for summary judgment, respondent failed to appear in court on Mr. Eugene’s behalf. He also failed to inform Mr. Eugene of the judgment rendered against him.
Mr. Eugene filed a complaint against respondent with the ODC in October 1997. A copy of Mr. Eugene’s complaint was forwarded to respondent by certified mail in November 1997. Respondent did not answer the complaint until May 1998.
Count'VII — The Chatters Matter
In October 1996, Rutherford Chatters retained respondent to handle a workers’ compensation matter. Respondent failed to adequately communicate with his client and failed to comply with Mr. Chatters’ request that his file be returned to him upon | (¡termination of the representation in January 1997. In addition,; respondent took $880 in fees from Mr. Chatters’ benefit checks without court approval.
In May 1997, Mr. Chatters filed a complaint against respondent with the ODC. Some time after May 18, 1998, respondent made restitution to Mr. Chatters.
Count VIII — The Mansfield Matter
In October 1996, Eric Mansfield retained respondent to handle a domestic matter. In January 1997, respondent failed to appear in court ‘ on Mr. Mansfield’s behalf and a judgment was rendered against him. Respondent agreed to file a petition to nullify the judgment and advised Mr. Mansfield that a court date had been set in February 1997. On the day of the alleged court date, respondent advised Mr. Mansfield that he had never filed the petition of nullity. Respondent thereafter refused to communicate, with Mr. Mansfield concerning the matter.
Mr. Mansfield filed a complaint against respondent with the ODC in December *772 1997. A copy of the complaint was forwarded to respondent by certified mail in January 1998. Respondent did not answer the complaint until May 1998.
Count IX — The Chambers Matter
In May 1997, Eric Chambers retained respondent to handle a personal injury matter. When the case settled in July 1997, respondent withheld $2,367 to pay Mr. Chambers’ medical providers; however, he failed to do so.
Mr. Chambers filed a complaint against respondent with the ODC in January 1999. Respondent failed to cooperate in the ODC’s investigation of the complaint.
Count X — The Uptown Physical Medicine and Rehabilitation Matter
7Respondent represented personal injury clients who were referred to Uptown Physical Medicine and Rehabilitation for medical treatment. In connection with these referrals, respondent provided the clinic with a guarantee that his clients’ medical expenses would be paid when their cases settled. The cases settled in 1996 and 1997, and respondent withheld the money to pay the clinic. Nevertheless, respondent failed to do so, leaving the clinic with a total outstanding bill of $4,437.
The clinic filed a complaint against respondent with the ODC in January 1999. Respondent made full restitution to the clinic in February 1999. However, respondent failed to cooperate in the ODC’s investigation of the complaint.
Count XI — The Reed Matter
In 1993, Cynthia Reed retained respondent to represent her interests in two civil claims. One claim was dismissed due to mistakes made by Ms. Reed’s previous attorney. The second claim is not progressing. Nonetheless, respondent continues to tell Ms. Reed that he is “awaiting a trial date.”
Ms. Reed filed a complaint against respondent with the ODC in March 1999. Respondent failed to cooperate in the ODC’s investigation of the complaint.
Count XII — The Labry Matter
In 1995, Larry Labry retained respondent to handle a workers’ compensation matter. Respondent failed to adequately communicate with his client for more than four years and performed little or no work in the matter, despite his representations to the contrary. When Mr. Labry attempted to retrieve his file from respondent, he discovered that respondent had moved, leaving no forwarding address.
I «Mr. Labry filed a complaint against respondent with the ODC in September 1999. Respondent failed to cooperate in the ODC’s investigation of the complaint.
Count XIII — The Bolden Matter
In 1998, Yolanda Bolden retained respondent to handle a personal injury matter. Ms. Bolden had an initial meeting with respondent and received a copy of one letter respondent wrote on her behalf; however, her telephone calls were not returned and other attempts to contact respondent were futile. In June 1999, Ms. Bolden was finally able to reach respondent, who told her that he would do something on the case. In September 1999, Ms. Bolden discovered that respondent had moved his office, leaving no forwarding address. Thereafter, Ms. Bolden sent a letter to respondent’s last known address, terminating his representation and requesting the return of her file. Respondent failed to respond to her request.
Ms. Bolden filed a complaint against respondent with the ODC in October 1999. Respondent failed to cooperate in the ODC’s investigation of the complaint.
*773 Count XIV — The Dickerson Matter
In 1996, Thelma Dickerson retained respondent to handle two legal matters on her behalf. Respondent failed to adequately communicate with Ms. Dickerson for more than three years and failed to keep her advised of the progress of the matters. When Ms. Dickerson attempted to retrieve her files from respondent, she discovered that respondent had moved his office, leaving no forwarding address.
Ms. Dickerson filed a complaint against respondent with the ODC in November 1999. Respondent failed to cooperate in the ODC’s investigation of the complaint.
| c)Count XV— The Woods Matter
In November 1997, Rita Woods retained respondent to handle a personal injury matter. Respondent failed to adequately communicate with Ms. Woods and failed to provide her with a copy of her file when requested.
Ms. Woods filed a complaint against respondent with the ODC in November 1999. Respondent failed to cooperate in the ODC’s investigation of the complaint.
Count XVI — The Dright Matter
In May 1999, Joyce Dright paid respondent a $250 retainer fee to pursue a legal name change for her daughter. Thereafter, respondent failed to adequately communicate with Ms. Dright and failed to keep her advised of the progress of her case.
Ms. Dright filed a complaint against respondent with the ODC' in February 2000. The complaint indicated that she did not know respondent’s current office address and learned of his new office telephone number by calling his secretary at her home. Respondent failed to cooperate in the ODC’s investigation of the complaint.
Count XVII — The Matthews Matter
In February 1995, Eleanor Matthews’ mother retained respondent to pursue a claim against the Sewerage & Water Board. Ms. Matthews’ mother received one letter from respondent in June 1995, indicating that he was awaiting a response from the claims adjustor. Ms. Matthews’ mother passed away in 1997. Beginning in January 1998, Ms. Matthews made numerous attempts to get a status report from respondent to no avail. Furthermore, a review of the court record revealed that Ms. |1flMatthews’ mother’s claim was dismissed in August 1997 for failure to respond to discovery requests.
Ms. Matthews filed a complaint against respondent with the ODC in February 2000. Respondent failed to cooperate in the ODC’s investigation of the complaint.
Count XVIII — The DeLarge Matter
Bettye DeLarge was a client of Charles White, an attorney whom this court disbarred in 1998.[2] On June 4, 1998, Judge Yada Magee of the Civil District Court for the Parish of Orleans appointed respondent as curator to inventory Mr. White’s files and to protect the interests of his clients,[3] pursuant to Supreme Court Rule XIX, § 27. Ms. DeLarge called respondent on several occasions and sent him a certified letter requesting that he contact her so that she could secure her files and obtain a refund of the fees she paid to Mr. White. Respondent did not respond to Ms. DeLarge’s telephone calls or to her letter.
*774 Ms. DeLarge filed a complaint against respondent with the ODC. Respondent failed to cooperate in the ODC’s investigation of the complaint.
Count XIX — The Pierre Matter
Carla Pierre’s son retained respondent to handle a personal injury matter. Ms. Pierre’s son was subsequently incarcerated, and Ms. Pierre was given power of attorney to handle his affairs. Some time in late 1998 or early 1999, Ms. Pierre contacted respondent and supplied him with a copy of the power of attorney. | n Thereafter, respondent failed to adequately communicate with her or his client. On occasion, respondent’s telephone was also disconnected.
Ms. Pierre, on behalf of her son, filed a complaint against respondent with the ODC in March 2000. Respondent failed to cooperate in the ODC’s investigation of the complaint.
Count XX — The Alexander Matter
In 1997, Cynthia Alexander retained respondent to handle a personal injury matter. When Ms. Alexander was unsuccessful in contacting respondent at his office, she finally located him by phoning his mother, who provided Ms. Alexander with respondent’s new address and telephone number. When Ms. Alexander spoke with respondent, he advised her that he would look at her file and return her telephone call. When respondent failed to do so, Ms. Alexander tracked him down again, at which point she was informed that her file was lost.
Ms. Alexander filed a complaint against respondent with the ODC in April 2000. Respondent failed to cooperate in the ODC’s investigation of the complaint.

00-DB-136/02-DB-0J/.2

The Johnson Matter

In 1995, Melissa Johnson retained respondent to handle a personal injury matter. Respondent failed to adequately communicate with her. Ms. Johnson subsequently discovered that respondent moved his office, leaving no forwarding address.
Ms. Johnson filed a complaint against respondent with the ODC in June 2000. A copy of the complaint was forwarded to respondent by certified mail in July 2000. | ^Respondent did not answer the complaint until October 2000, at which time he blamed Ms. Johnson for losing contact with his office. Furthermore, although respondent claims to be representing Ms. Johnson, there is evidence that her case was dismissed on grounds of abandonment.

01-DB-02Z/02-DB-0A2

Count I — The Gaines Matter
In October 1997, Ronald Gaines retained respondent to handle a personal injury matter. Respondent failed to adequately communicate with his client and failed to keep him advised of the progress of his case.
Mr. Gaines filed a complaint against respondent with the ODC in November 2000. Respondent failed to cooperate in the ODC’s investigation of the complaint.
Count II — The Despanza Matter
In May 1996, Sylvester and Melva Des-panza retained respondent to handle a personal injury matter. Mr. and Mrs. Des-panza have had no contact with respondent since June 1999. In October 2000, Mr. and Mrs. Despanza were served with a motion to enforce a settlement agreement.[4] Mr. and Mrs. Despanza were informed by the defendant’s attorney that respondent *775 had settled their personal injury cases for $2,540 and $4,000, respectively. The settlement checks were apparently hand-delivered to respondent in February 2000 and negotiated after respondent represented to defense counsel that he had his clients’ authority to do so; however, respondent failed to return the executed release documents to defense counsel. Mr. and Mrs. Despanza 11gwere never advised of the settlement, nor have they ever received any of the settlement funds.
Mr. and Mrs. Despanza filed a complaint against respondent with the ODC in November 2000. Respondent failed to cooperate in the ODC’s investigation of the complaint.

02-DB-105

Count I — The McGary Matter
In January 1998, Timothy McGary retained respondent to handle a personal injury matter. Respondent failed to adequately communicate with Mr. McGary and failed to keep him advised of the progress of his case. Furthermore, respondent failed to notify Mr. McGary of his new address and telephone number. Respondent also failed to notify his client of a court date and failed to appear on his behalf. As such, Mr. McGary’s suit was dismissed.
Mr. McGary filed a complaint against respondent with the ODC in February 2001. Respondent failed to cooperate with the ODC in its investigation of the complaint.
Count II — The Matthews Matter
In February 1997, Sharon Matthews retained respondent to handle a personal injury matter. Respondent failed to adequately communicate with Ms. Matthews and failed to keep her advised of the progress of her case. Furthermore, respondent failed to notify Ms. Matthews of his new address and telephone number.
| 14Ms. Matthews filed a complaint against respondent with the ODC in April 2001. Respondent failed to cooperate with the ODC in its investigation of the complaint.
Count III — The Bates Matter
In December 1996, Robert Bates hired respondent to handle a breach of contract matter. Mr. Bates paid respondent a $300 fee. In May 1997, respondent fax-filed Mr. Bates’ suit; however, respondent failed to mail the original suit to the court or pay the filing fee. As such, the suit was not valid. Furthermore, respondent failed to adequately communicate with his client and failed to keep him advised of the progress of his case. Respondent also failed to notify Mr. Bates of his new address and telephone number.
Mr. Bates filed a complaint against respondent with the ODC in June 2001. Respondent failed to cooperate with ODC’s investigation of the complaint.

Count TV— The Marvin Matter

In July 1999, Thea Marvin paid respondent $2,500 to handle a business and property distribution matter. Ms. Marvin provided respondent with original documents needed to proceed with the matter. Thereafter, respondent failed to perform the work as requested by Ms. Marvin and failed to adequately communicate with her. Furthermore, respondent failed to respond to Ms. Marvin’s numerous requests for the return of her documents, an accounting of the fees earned, and a refund of any unearned fees.
Ms. Marvin filed a complaint against respondent with the ODC in June 2001. Respondent failed to cooperate in the ODC’s investigation of the complaint.
| KCount V — The Trinh/Mak Matter
Chun Sang Mak retained respondent to handle a personal injury matter. In Au *776 gust 2000, the matter settled in Mr. Mak’s favor for $35,830.99. Mr. Mak endorsed the settlement check but, despite numerous attempts, did not receive a check for his portion of the proceeds ($20,300) from respondent until July 2001. Unfortunately, the check was returned because of insufficient funds in respondent’s account. Furthermore, respondent did not inform Mr. Mak of his interim suspension.
Immediately thereafter, Mr. Mak and his son-in-law, Mike Trinh, filed complaints against respondent with the ODC. Respondent failed to cooperate with the ODC in its investigation of the complaints.
Count VI — The Del. Riley Matter
In August 1998, Trudy Del Riley’s legal matter was transferred to respondent because a conflict of interest arose with her previous attorney. However, respondent failed to appear for Ms. Del Riley’s first scheduled appointment and, thereafter, failed to adequately communicate with her. Furthermore, he failed to return her file despite repeated requests and attempts on her part.
Ms. Del Riley filed a complaint against respondent with the ODC in August 2001. Respondent failed to cooperate in the ODC’s investigation of the complaint.
Count VII — The Hill Matter
In October 2000, Angela Hill retained respondent to handle a worker’s compensation matter. The matter was settled and approved by the worker’s compensation judge in January 2001. Respondent wrote a check from his trust account to Ms. Hill in the amount of $20,005.87 as her portion of the settlement h (¡proceeds. However, this check was returned because of insufficient funds in respondent’s account. In April 2001, respondent wrote Ms. Hill another check from his trust account for her portion of the proceeds, which was again returned because of insufficient funds. Additionally, respondent received a separate settlement check on behalf of Ms. Hill in the amount of $5,328, which he endorsed and deposited into his trust account. However, he failed to distribute to Ms. Hill her portion of these settlement funds.
Ms. Hill filed a complaint against respondent with the ODC in August 2001. Respondent failed to cooperate with the ODC’s investigation of the complaint.
Count VIII — The Carter Matter
In February 1998, Rita Carter retained respondent to handle a medical malpractice claim. Respondent failed to adequately communicate with his client and failed to keep her advised of the progress of her case, telling her only that he was working on it and asking her to check back with him every month. Additionally, respondent filed suit after the prescription date. Thereafter, he did not appear at the hearing on the defendant’s exception of prescription, and Ms. Carter’s case was dismissed in July 1999. Respondent also failed to inform Ms. Carter of his interim suspension.
Ms. Carter filed a complaint against respondent with the ODC in September 2001. Respondent failed to cooperate with the ODC’s investigation of the complaint.
Count IX — The Wallace Matter
In September 2000, Chressye Wallace retained respondent to handle a personal injury matter. When the case settled, respondent cashed the settlement check but [17failed to pay either Ms. Wallace or her doctors their portions of the settlement proceeds. Ms. Wallace was finally able to reach respondent in August 2001, at which time respondent told her she would receive her money the next day. However, respondent failed to pay Ms. Wallace or communicate with her further.
Ms. Wallace filed a complaint against respondent with the ODC in August 2001. *777 Respondent failed to cooperate with the ODC in its investigation of the complaint.
Count X — The Mak Matter
In March 2000, Nancy Mak retained respondent to handle a personal injury matter. Ms. Mak delivered all pertinent documents to respondent. Thereafter, respondent failed to communicate with her despite numerous attempts on her part. She was also unable to retrieve her file from respondent. When she was finally able to speak with him, he informed her that her suit had been filed with the court when, in fact, it had not.
Ms. Mak filed a complaint against respondent with the ODC in October 2001. Respondent failed to cooperate with the ODC in its investigation of the complaint.
Count XI — The Brannan Matter
On July 24, 2001, Nanci Brannan hired respondent to prepare a partnership agreement and represent her until the agreement was finalized. At this time, respondent was on interim suspension but failed to inform Ms. Brannan of his inability to practice law. Ms. Brannan gave respondent a $1,500 watch as payment for his services. Despite numerous attempts, Ms. Brannan was unable to contact respondent directly. As such, respondent failed to provide Ms. Brannan with the | isagreement on time. When he did finally deliver it, it was incomplete. Subsequently, respondent failed to adequately communicate with his client. Furthermore, when Ms. Brannan confronted respondent with his suspension, he denied ever agreeing to do legal work and insisted he was only acting as a business consultant. He also failed to respond when Ms. Brannan requested the return of her watch.
Ms. Brannan filed a complaint against respondent with the ODC in November 2001. Respondent failed to cooperate with the ODC in its investigation of the complaint.
DISCIPLINARY PROCEEDINGS

Formal Charges

02-DB-0J/.2

The formal charges in 02-DB-042 (which, as noted earlier, encompassed 00-DB-077, 00-DB-136 and 01-DB-022) allege respondent’s conduct constitutes a violation of the following Rules of Professional Conduct: Rules 1.1 (failure to provide competent representation to a client), 1.3 (failure to act with diligence and promptness in representing a client), 1.4 (failure to communicate with a client), 1.5 (fee arrangements), 1.15 (safekeeping property of clients or third persons), 1.16(d) (obligations upon termination of the representation), 3.2 (failure to make reasonable efforts to expedite litigation), 8.4(c) (engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation), and 8.4(g) (failure to cooperate with the ODC in its investigation), as well as a violation of Supreme Court Rule XIX, § 9(c) (knowing failure to respond to a lawful demand from a disciplinary authority).
Respondent answered the three sets of formal charges consolidated into 02-DB-042 and essentially denied any misconduct. Thereafter, the hearing committee 11flconducted a formal hearing. Neither respondent nor counsel on his behalf appeared at the hearing. The ODC introduced four binders of documentary evidence in support of the allegations against respondent. The ODC also called several witnesses to testify before the committee about respondent’s misconduct.

Hearing Committee Recommendation

After considering the documentary evidence and live testimony, the hearing committee determined that respondent violat *778 ed the Rules of Professional Conduct as alleged in the formal charges. The committee found the witnesses to be credible and found respondent’s failure to participate in the hearing a reinforcement of the formal charges against him. In reviewing respondent’s sworn statement given prior to the hearing, the committee noted that respondent made numerous excuses that showed a pattern of neglect, lack of diligence, and lack of communication.[5]
Based on this evidence, the committee found respondent has engaged in a pattern of misconduct, resulting in repeated violations of the Rules of Professional Conduct. The committee further found that respondent acted knowingly and intentionally and caused harm to his clients, the public, and the profession.
The committee determined that disbarment was the baseline sanction under the ABA’s Standards for Imposing Lawyer Sanctions. Moreover, based on Supreme Court Rule XIX, Appendix E and this court’s prior jurisprudence, it found permanent disbarment was appropriate.
The committee found the following aggravating factors were present: dishonest or selfish motive, a pattern of misconduct, multiple offenses, bad faith obstruction of the disciplinary proceeding by intentionally failing to comply with rules or orders of | anthe disciplinary agency, and refusal to acknowledge the wrongful nature of the conduct. It found no mitigating factors.
Accordingly, the committee recommended that respondent be permanently disbarred, make full restitution to his victims, and be assessed with all costs of these proceedings.
Neither respondent nor the ODC objected to the hearing committee’s recommendation.

02-DB-105

Formal Charges

The formal charges in 02-DB-105 allege that respondent’s conduct constitutes a violation of the following Rules of Professional Conduct: Rules 1.1, 1.3, 1.4, 1.5(f)(6) (failure to refund an unearned fee), 1.15, 1.16(d), 3.2, 5.5 (engaging in the unauthorized practice of law), 8.4(a) (violation of the Rules of Professional Conduct), 8.4(b) (commission of a criminal act reflecting adversely on the lawyer’s honesty, trustworthiness, or fitness as a lawyer), 8.4(c), and 8.4(g), as well as a violation of Supreme Court Rule XIX, § 9(c).
Respondent was served with the formal charges via certified mail. However, he failed to answer or other reply. Accordingly, the factual allegations contained therein were deemed admitted and proven by clear and convincing evidence pursuant to Supreme Court Rule XIX, § 11(E)(3). No formal hearing was held, but the parties were given an opportunity to file with the hearing committee written arguments and documentary evidence on the issue of sanctions. Respondent filed nothing for the hearing committee’s consideration.
| g1Hearing Committee Recommendation
The committee determined that respondent violated the Rules of Professional Conduct as alleged in the formal charges.[6] The committee also made factual findings in each count that mirror the facts stated above in the formal charges section.
The committee determined respondent commingled and converted funds and *779 failed to provide accountings for his fees or refund unearned fees. It further found he failed to communicate with his clients or provide diligent representation to them, and also failed to cooperate with the ODC in its investigations. Furthermore, it concluded respondent engaged in the unauthorized practice of law by accepting the representation of a client after he had been suspended from the practice of law, an act which harmed his client, the public, the legal system, and the profession.
Based on the ABA’s Standards for Imposing Latuyer Sanctions, the committee determined the baseline sanction for respondent’s misconduct was disbarment. However, the committee also recognized that respondent’s misconduct falls into two of the permanent disbarment guidelines.
In aggravation, the committee found pri- or disciplinary offenses, dishonest or selfish motive, a pattern of misconduct, bad faith obstruction of the disciplinary proceeding by intentionally failing to comply with rules or orders of the disciplinary agency, and indifference to making restitution. The committee found no mitigating factors were present.
Based on these findings, the committee recommended that respondent be permanently disbarred from the practice of law. Furthermore, he should be assessed with all costs of these proceedings.
| ^Neither respondent nor the ODC objected to the hearing committee’s recommendation.[7]

02-DB-0I2 & 02-DB-105

Disciplinary Board Recommendation

As noted, the disciplinary board consolidated the charges in 02-DB-042 and 02-DB-105 for its review. As to 02-DB-042, the board found no manifest error in the committee’s findings as to Counts I-YIII, XI, and XVII of former case number 00-DB-077. However, the board did find manifest error in the committee’s findings as to Counts XII-XVI and Counts XVIII-XX of former case number 00-DB-077, noting that the ODC did not submit the testimony of the complainants in support of the substantive allegations at the hearing. Nonetheless, it found the allegations of failure to cooperate with the ODC were supported by the evidence submitted at the hearing. Furthermore, the board found that only Rules 1.15(b) and 8.4(g) were violated in connection with Counts IX and X of former case number 00-DB-077. The committee’s determinations regarding all counts of former case number 00-DB-136 and former case number 01-DB-022 were correct.
As to 02-DB-105, the board found no manifest error in the committee’s findings. However, the board noted that the committee failed to find violations of Rule 1.4 as to Count VII and Rule 8.4(a) as to Count IX when respondent had, in fact, violated these rules as alleged in the two counts.[8]
| ¡.¡¡Despite the board’s determination that several counts were not proven, it found the remaining counts revealed respondent engaged in numerous instances of neglect *780 of legal matters, failure to communicate, failure to promptly pay third-party medical providers, failure to return client files, failure to refund unearned fees, and failure to cooperate with the ODC. Furthermore, it noted respondent converted client funds on three occasions and engaged in the unauthorized practice of law after being suspended. It noted all of this misconduct caused substantial harm to respondent’s clients.
Citing the ABA’s Standards for Imposing Lawyer Sanctions, the board determined indicates disbarment was the appropriate baseline sanction for respondent’s misconduct. Further, it noted respondent’s conversion of client funds and unauthorized practice of law falls into the permanent disbarment guidelines. Additionally, this court’s prior jurisprudence also supports permanent disbarment for respondent’s misconduct.
The board determined that the following aggravating factors were present: prior disciplinary offenses, dishonest or selfish motive, pattern of misconduct, multiple offenses, bad faith obstruction of the disciplinary proceeding by intentionally failing to comply with rules or orders of the disciplinary agency, and indifference to making restitution. It found no mitigating factors.
Under these circumstances, the board recommended that respondent be permanently disbarred from the practice of law and be assessed with all costs of these proceedings.
Neither respondent nor the ODC objected to the disciplinary board’s recommendation.
I «DISCUSSION
Bar disciplinary matters come within the original jurisdiction of this court. La. Const, art. V, § 5(B). Consequently, we act as triers of fact and conduct an independent review of the record to determine whether the alleged misconduct has been proven by clear and convincing evidence. In re: Quaid, 94-1316 (La.11/30/94), 646 So.2d 343; Louisiana State Bar Ass’n v. Boutall, 597 So.2d 444 (La.1992). While we are not bound in any way by the findings and recommendations of the hearing committee and disciplinary board, we have held the manifest error standard is applicable to the committee’s factual findings. See In re: Caulfield, 96-1401 (La.11/25/96), 683 So.2d 714; In re: Pardue, 93-2865 (La.3/11/94), 633 So.2d 150.
Based upon our review, we determine that the findings of the hearing committees, as modified by the disciplinary board, are supported by clear and convincing evidence in the record. Without burdening the reader with a detailed recitation of this misconduct, it suffices to say respondent engaged in numerous instances of neglect of legal matters, failure to communicate with his clients, failure to promptly remit funds to his clients and third-party medical providers, failure to protect his clients’ interests upon termination of the representation, failure to refund unearned fees, engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation, and failure to cooperate with the ODC. Most significantly, the record reveals respondent mishandled client and third-party funds, converting substantial amounts of these funds to his own use, and flouted the authority of this court by engaging in the unauthorized practice of law after we placed him on interim suspension.
Having found indisputable evidence of professional misconduct, we now turn to consideration of the sanction. In determining an appropriate sanction, we arej^mindful that disciplinary proceedings are designed to maintain high standards of *781 conduct, protect the public, preserve the integrity of the profession, and deter future misconduct. Louisiana State Bar Ass’n v. Reis, 513 So.2d 1173 (La.1987). The discipline to be imposed depends upon the facts of each case and the seriousness of the offenses involved, considered in light of any aggravating and mitigating circumstances. Louisiana State Bar Ass’n v. Whittington, 459 So.2d 520 (La.1984).
Unquestionably, the baseline sanction for respondent’s egregious misconduct in this case is disbarment. However, the disciplinary board urges us to go further and consider permanently prohibiting respondent from seeking readmission to the practice of law.
In Appendix E to Supreme Court Rule XIX, we set forth guidelines illustrating the types of conduct which might warrant permanent disbarment. While these guidelines are not intended to bind this court in its decision-making process, they present useful information concerning the types of conduct we might consider worthy of permanent disbarment.
Applying those guidelines to the instant case, we find respondent’s conversion of client and third party funds falls within the scope of Guideline 1, which applies to “Repeated or multiple instances of intentional conversion of client funds with substantial harm”. Likewise, we find his decision to engage in the unauthorized practice of law following his interim suspension implicates Guideline 8 (“Following notice, engaging in the unauthorized practice of law ... during the period of time in which the lawyer is suspended from the practice of law or disbarred”). The numerous aggravating factors present — prior disciplinary offenses, dishonest or selfish motive, a pattern of misconduct, multiple offenses, bad faith obstruction of the disciplinary proceedings by intentionally failing to comply with rules or orders of the disciplinary l^agency, and refusal to acknowledge wrongful nature of conduct — only reinforce the conclusion that permanent disbarment is warranted.
In summary, we find the egregious and persistent nature of the respondent’s misconduct, combined with the numerous aggravating factors, convincingly establishes that he is not morally fit to practice law. He has victimized both clients and third parties in the past and it is highly likely he will continue to do so in the future if given an opportunity. Under these circumstances, we would be remiss in our constitutional duties to regulate the practice of law if we did not disbar respondent on a permanent basis.
Accordingly, we will accept the disciplinary board’s recommendation and impose permanent disbarment.
DECREE
Upon review of the findings and recommendations of the hearing committee and disciplinary board, and considering the record, it is ordered that the name of Wendell G. Armant, Louisiana Bar Roll number 21225, be stricken from the roll of attorneys and that his license to practice law in the State of Louisiana be revoked. Pursuant to Supreme Court Rule XIX, § 24(A), it is further ordered that respondent be permanently prohibited from being readmitted to the practice of law in this state. Respondent is ordered to provide complete accountings and full restitution to his victims. All costs and expenses in the matter are assessed against respondent in accordance with Supreme Court Rule XIX, § 10.1, with legal interest to commence thirty days from the date of finality of this court’s judgment until paid.

. In addition to prior discipline, we note respondent has been declared ineligible to prac *770 tice law on several occasions for failing to comply with his professional obligations:
9/30/94 to 10/14/94 — failure to pay bar dues;
9/3/99 to 1/26/01 — failure to pay bar dues and the disciplinary assessment;
8/14/00 to 1/26/01 — failure to comply with the mandatory continuing legal education
(“MCLE”) requirements; and 8/3/02 to present — failure to comply with the MCLE requirements.

. See In re: White, 97-2731 (La.2/6/98), 706 So.2d 964.

. It is unclear from the record whether respondent was actually served with the order appointing him as curator. The ODC asserts that it cannot fully investigate the matter without respondent’s cooperation, which has not been forthcoming.

. Respondent was also served with the motion; however, he did not appear in court for the hearing.

. For example, when asked about client files, respondent gave responses such as: "I don't recall,” "no independent recollection of that,” "my memory is fuzzy,” "I can’t find them.”

. The committee did not find violations of Rule 1.4 in Count VII or Rule 8.4(b) in Count IX, but this seems to be a mere oversight,

. However, respondent did send a handwritten letter to the board following the committee’s report. In the letter, he denied "stealing money” from his clients or engaging in the unauthorized practice of law. He also informed the board that he would make full restitution to all of his clients except Ms. Brannan.

. The committee actually failed to find a violation of Rule 8.4(b) as to Count IX, not Rule 8.4(a) as stated by the board. However, the board included a footnote in its report indicating that it thought the committee’s citing of Rule 8.4(a) was a typographical error when they really meant to refer to Rule 8.4(b).