*825 ATTORNEY DISCIPLINARY PROCEEDINGS
LPER CURIAM.
This disciplinary matter arises from formal charges filed by the Office of Disciplinary Counsel (“ODC”) against respondent, A. Gill Dyer, a disbarred attorney.[1]
UNDERLYING FACTS AND PROCEDURAL HISTORY
Between 2000 and 2003, the ODC filed five sets of formal charges against respondent. The charges were ultimately consolidated by the hearing committee on November 4, 2003. On March 3, 2005, the disciplinary board filed in this court a single recommendation of discipline encompassing all matters involving respondent.
00-DB-026[2]
On October 19, 1999, respondent was disbarred in Dyer I, effective as of February 11, 1998, the date of his interim suspension. Nevertheless, in March 1999, respondent accepted the representation of Diane M. DeChant in a personal injury | ¡¿matter. Respondent entered into a contingent fee agreement with Ms. DeChant and sent authorization forms to her so that he could obtain her medical records.
The ODC alleged that respondent’s conduct violated Rules 3.4(c) (knowing disobedience of an obligation under the rules of a *826 tribunal), 5.5(a) (engaging in the unauthorized practice of law), 8.4(a) (violation of the Rules of Professional Conduct), 8.4(b) (commission of a criminal act reflecting adversely on the lawyer’s honesty, trustworthiness, or fitness as a lawyer), 8.4(c) (engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation), and 8.4(d) (engaging in conduct prejudicial to the administration of justice) of the Rules of Professional Conduct.

01-DB-061

Respondent filed a claim on behalf of Karen Burnthorne in a pending breast implant class action lawsuit. In February 1997, respondent received a $379.90 check from the settlement fund on behalf of Ms. Burnthorne. Respondent returned the check to the claims administrator, advised that the amount was incorrect, and requested a new check in the correct amount. None of this information was communicated to Ms. Burnthorne. In March 1998, respondent received a replacement check in the amount of $750, made payable to “Karen Burnthorne & A Gill Dyer.” Ms. Burnthorne was never contacted regarding this settlement and did not endorse the check. Nevertheless, the check was negotiated and deposited into., respondent’s bank account. Respondent did not disburse the funds to Ms. Burnt-horne, nor did he provide her with an accounting.
The ODC alleged that respondent’s conduct violated Rules 1.3 (failure to act with reasonable diligence and promptness in representing a client), 1.4 (failure to communicate with a client), 1.15(b) (failure to promptly account for and deliver funds |3or property owed to a client or third party), and 8.4(a) of the Rules of Professional Conduct.

02-DB-OJpS

In connection with a bankruptcy matter involving respondent’s client, Donna Kay Penton, the United States Bankruptcy Court for the Middle District of Louisiana issued an order to show cause which directed respondent to submit a response in the form of a sworn affidavit. Respondent filed an affidavit that was purportedly notarized, but he was subsequently unable to provide the court with the notary’s name. In sworn testimony in open court on February 14, 2000, respondent explained that he had the affidavit notarized by an unknown person he found on the sidewalk outside an office building in Covington. Respondent admitted that he did not ask for or see any identification or other evidence that the person was in fact a duly commissioned notary. The court made a factual finding that respondent’s testimony regarding the purported notary signature was false and that the affidavit was not actually notarized. After a hearing in May 2000, respondent was found in civil contempt of court for having failed to comply with a directive of the bankruptcy court to file a verified response to the previously issued order to show cause.
The ODC alleged that respondent’s conduct violated Rules 3.1 (meritorious claims and contentions), 3.2 (failure to make reasonable efforts to expedite litigation), 3.3 (candor toward the tribunal), 3.4, 8.4(a), 8.4(c), and 8.4(d) of the Rules of Professional Conduct.
| fiS-DB-086 .

Count I

Respondent represented Sandra K. Mickenhime in a pending breast implant class action lawsuit. In June 1999, respondent received a $12,000 check in settlement of Ms. Mickenhime’s claims against 3M Corporation, payable to respondent, his co-counsel, and Ms. Mickenhime. Re *827 spondent endorsed the check and deposited it into his bank account in mid-June 1999. Although he met with Ms. Micken-hime several times thereafter, he never advised her that he had received settlement funds on her behalf, nor did he disburse the funds to her.
Even after respondent’s interim suspension and disbarment in Dyer I, he held himself out to Ms. Mickenhime as eligible to practice law, and led her to believe that he was continuing to pursue her claim. Furthermore, respondent failed to cooperate with the ODC in its investigation of Ms. Mickenhime’s complaint.
The ODC alleged that respondent’s conduct violated Rules 1.3, 1.4, 1.15(b), 1.16(a)(d) (termination of the representation), 5.5(a), 8.1(c) (failure to cooperate with the ODC in its investigation), 8.4(a), 8.4(b), 8.4(c), 8.4(d), and 8.4(g) (failure to cooperate with the ODC in its investigation) of the Rules of Professional Conduct.

Count II

In July 2000, after his disbarment in Dyer I, respondent had several telephone conversations with Jim Keller concerning his pending personal injury case. Respondent advised Mr. Keller that he would obtain his file from his attorney, review the matter, and refer the case to a qualified attorney. By letter dated July 19, 2000, respondent forwarded" a contingent fee agreement and medical releases to Mr. Keller for execution, and a letter terminating Mr. Keller’s attorney/client relationship with |RLarry Boudreaux. Upon advice of disciplinary counsel, respondent subsequently informed Mr. Keller that he could not handle the case and returned his file to him.
The ODC alleged that respondent’s conduct violated Rules 5.5(a), 8.4(a), 8.4(c), and 8.4(d) of the Rules of Professional Conduct.

03-DB-071

Sandra Mickenhime, respondent’s client subject of Count I in docket number 03-DB-036, reported respondent’s conduct to the East Baton Rouge Parish District Attorney’s Office. On September 11, 2003, respondent pleaded guilty to felony theft, a violation of La. R.S. 14:67, stemming from the Mickenhime matter. State v. Albert Gill Dyer, No. 2-03-332 on the docket of the 19th Judicial District Court. Under the provisions of La.Code Crim. P. art. 893, the court deferred the imposition of sentence for a period of three years and placed respondent on active, supervised probation for that period. Respondent was also ordered to pay $12,000 in restitution to Ms. Mickenhime.[3] Respondent failed to report his conviction to the ODC.
The ODC alleged that respondent’s conduct violated Rules 8.3(a) (reporting professional misconduct), 8.4(a), 8.4(b), and 8.4(e) of the Rules of Professional Conduct.
DISCIPLINARY PROCEEDINGS
Respondent was served with all five sets of formal charges. He responded to each and denied any misconduct. Hearing Committee # 2 considered the first set of | (formal charges, docket number 00-DB-026, at a hearing conducted on September 21, 2000. Hearing Committee # 28 consid *828 ered the remaining charges at a hearing conducted on September 29, 2003.

Rearing Committee Recommendations

00-DB-026

Considering the evidence and testimony presented at the hearing, Hearing Committee #2 made a factual finding that after respondent was placed on interim suspension, he executed a contingent fee agreement with Ms. DeChant and had her execute medical release forms for the purpose of obtaining medical records. The committee noted that it may be proper for a non-lawyer to conduct these activities under the supervision of a lawyer; however, respondent admitted that he was not being supervised by any lawyer at the time these activities were performed. Based on these factual findings, the committee concluded that respondent' violated Rules 3.4(c), 5.5(a), 8.4(a), 8.4(c), and 8.4(d) of the Rules of Professional Conduct.[4] The committee recommended that respondent be disbarred for this conduct.

01-DB-061; 02-DB-0U03-DB-036; 03-DB-071

Considering the evidence and testimony presented at the hearing, Hearing Committee #28 made the following findings:
01-DB-061 — The committee found that respondent violated Rules 1.3, 1.4, 1.15(b), and 8.4(a), as alleged in the formal charges. Respondent did not keep Ms. Burnthorne apprised of her claim and she was completely unaware of the settlement until she received a telephone call from a third party in 1997 or 1998 advising her that |7“Mr. Dyer had forged some checks.” Although respondent testified that he applied the total settlement proceeds to the costs he incurred in his representation of Ms. Burnthorne, no accounting has ever been provided to her.
02-DB-04-8 — The committee adopted the bankruptcy ■ court’s extensive findings of fact and reasons for judgment in sanctioning respondent for his actions in the Pen-ton bankruptcy matter. Respondent filed a purportedly notarized pleading when, in fact, the pleading was not notarized. He also presented false testimony to the bankruptcy judge and made misrepresentations and misstatements to the court.
03-DB-036 — In Count I, the committee found that Ms. Mickenhime was not kept informed of the status of her breast implant litigation and was never consulted regarding any settlement negotiations, nor did she approve the $12,000 settlement at issue. As in the claim with Ms. Burnt-horne, Ms. Miekenhime’s settlement check was endorsed by respondent or someone acting at his direction, and the proceeds were deposited directly into respondent’s trust account. Despite several requests by Ms. Mickenhime, respondent never provided her with an accounting or any information whatsoever regarding her claim. It was only after Ms. Mickenhime filed a criminal complaint against respondent that she received any funds from him. Furthermore, although respondent was inter-imly suspended on February 11, 1998 and subsequently disbarred, it appears, that he continued to discuss Ms. Mickenhime’s claim with her, never informing her of his suspension and/or disbarment.
In Count II, the committee found that sometime in June or July of 2000, respondent was contacted by Jim Keller regarding his representation for personal injury damages as a result of an automobile accident. This was long after respondent had been suspended and disbarred. Neverthe *829 less, by letter dated July 19, 2000, respondent forwarded a letter to Mr. Keller for his signature terminating Ms previous | ^attorney, a contingent fee contract, and various medical authorizations. Respondent did not indicate in the letter that he had been disbarred and was no longer a practicing attorney. The committee found that these actions by respondent constitute the unauthorized practice of law.
0S-DB-071■ — The committee found that respondent was convicted of felony theft stemming from the Mickenhime matter, and that such conduct reflects adversely on Ms honesty and trustworthiness as a lawyer. Furthermore, although the ODC was aware that a criminal complaint had been filed against respondent, the record is void of any communication or notification by respondent to the ODC that he was arrested for the theft of Ms. Mickenhime’s settlement proceeds or that he pleaded guilty to those charges. Based on these findings, the committee concluded that respondent violated Rules 8.3(a), 8.4(a), 8.4(b), and 8.4(c), as alleged in the formal charges.
The committee found that respondent’s conduct was knowing and intentional. Respondent knowingly endorsed Ms. Burnt-horne’s and Ms. Mickenhime’s signatures on their respective settlement checks and converted the entirety of their funds to his own use. He knowingly failed to adequately represent these individuals and intentionally kept them completely uninformed of the status of their respective cases. It was only after the criminal charges were brought against respondent by Ms. Mickenhime that he made any effort whatsoever to rectify the situation. He showed a complete lack of diligence in his representation of these two clients and engaged in a pattern of neglect regarding the handlmg of their claims. Respondent’s actions in 02-DB-043 are equally egregious. He failed to comply with the order of the bankruptcy court and intentionally brought a meritless claim with the intent to obtain a benefit for himself. Respondent also offered a purportedly notarized verification that he knew to be false and presented false testimony to the bankruptcy judge. ^Finally, in Count II of 03-DB-036, respondent knowingly represented a client in a legal capacity at a time when he was disbarred. Respondent failed to inform Mr. Keller of his disbarment and knowingly or intentionally violated the terms of his disbarment. Respondent’s conduct caused injury to his clients, the public, the legal system, and the legal profession. The applicable baseline sanction is disbarment.
The committee found the following aggravating factors are present: prior disciplinary offenses, dishonest or selfish motive, a pattern of misconduct, multiple offenses, vulnerability of the victims, substantial experience in the practice of law (admitted 1981), indifference to maMng restitution, and illegal conduct. The committee found that no mitigating circumstances are present.
Considering the extent of the applicable aggravating factors, the committee recommended that respondent be permanently disbarred.

Disciplinary Board Recommendation

After reviewing the consolidated matters, the disciplinary board agreed that respondent violated the Rules of Professional Conduct as charged in the five sets of formal charges. The board found that respondent violated duties owed to his clients, the public, the legal system, and the profession. His conduct was intentional and caused substantial injury. Ms. De-Chant’s matter was delayed, and she had to obtain additional counsel because of respondent’s deceitful representation to her that he was a practicing attorney. Mr. *830 Keller was also deceived by respondent and his case was delayed when respondent engaged in the unauthorized practice of law by drafting legal documents and attempting to gather medical records on his behalf. Further, Ms. Burnthorne’s settlement check was improperly negotiated by respondent, and she has never been provided an accounting by respondent for her settlement funds. Ms. ImMickenhime also experienced a delay in receiving her settlement funds and had to go so far as to have respondent criminally prosecuted in order to receive her funds. She also was deceived by respondent. He negotiated her settlement check without her knowledge or consent. He also never told her that he was interimly suspended or disbarred, although he deposited her settlement check and held himself out to her as her attorney during these time periods. Finally, the bankruptcy court, bankruptcy trustee, and other parties suffered a substantial loss of time and money addressing respondent’s frivolous filings in the Donna Kay Penton matter. The board concluded the appropriate baseline sanction for respondent’s misconduct is disbarment.
The board adopted the aggravating factors found by Hearing Committee #28 and agreed that no mitigating circumstances are present.
The board then turned to a discussion of the sanction of permanent disbarment. Respondent’s conduct fits within Guideline 1 of the permanent disbarment guidelines, which provides for permanent disbarment when an attorney engages in “repeated or multiple instances of intentional conversion of client funds with substantial harm.” In Dyer I, respondent converted a $982 medical payments check issued to his client. In the instant case, respondent converted the funds owed to Ms. Mickenhime and later pleaded guilty to felony theft of these funds. The record is unclear as to whether he has made full restitution of these funds as ordered by the court.
Guideline 8 provides that “following notice, engaging in the unauthorized practice of law subsequent to resigning from the Bar Association, or during the period of time in which the lawyer is suspended from the practice of law or disbarred,” also warrants permanent disbarment. Here, respondent engaged in the unauthorized practice of law on three occasions. First, while he was interimly suspended, he represented Ms. DeChant in her personal injury matter. While interimly suspended |nand disbarred, he represented Ms. Mick-enhime. Finally, while disbarred, he attempted to represent Mr. Keller.
Finally, Guideline 9 provides for permanent disbarment when “instances of serious attorney misconduct or conviction of a serious crime [occur], when the misconduct or conviction is preceded by suspension or disbarment for prior instances of serious attorney misconduct or conviction of a serious crime.” Serious crime is defined in Supreme Court Rule XIX, § 19 as “a felony or any other crime, the necessary element of which as determined by the statute defining such crime, reflects upon the attorney’s moral fitness to practice law.” Serious attorney misconduct is defined for purposes of the guidelines as “any misconduct which results in a suspension of more than one year.” Here, serious attorney misconduct is present [the baseline sanction is disbarment) and respondent has been convicted of a serious crime, felony theft, as defined by Rule XIX, § 19. This misconduct and conviction are preceded by respondent’s disbarment in 1999.
Considering these guidelines and the prior jurisprudence, the board recommended that respondent be permanently disbarred. The board also recommended that respondent be assessed with all costs and expenses of these proceedings.
*831 Neither respondent nor the ODC filed an objection to the disciplinary board’s recommendation.
DISCUSSION
Bar disciplinary matters come within the original jurisdiction of this court. La. Const, art. V, § 5(B). Consequently, we act as triers of fact and conduct an independent review of the record to determine whether the alleged misconduct has habeen proven by clear and convincing evidence. In re: Quaid, 94-1316 (La.11/30/94), 646 So.2d 343; Louisiana State Bar Ass’n v. Boutall, 597 So.2d 444 (La.1992).
Our review of the record demonstrates the ODC proved the allegations of professional misconduct by clear and convincing evidence. Among other serious misconduct, respondent engaged in the unauthorized practice of law following his interim suspension and disbarment in Dyer I. Respondent also converted settlement funds that he received on behalf of two of his clients, resulting in one matter in his felony conviction for theft. Respondent’s conduct clearly reflects adversely on his fitness as a lawyer.
Having found evidence of professional misconduct, we now turn to a determination of an appropriate sanction. In considering that issue, we are mindful that disciplinary proceedings are designed to maintain high standards of conduct, protect the public, preserve the integrity of the profession, and deter future misconduct. Louisiana State Bar Ass’n v. Reis, 513 So.2d 1173 (La.1987). The discipline to be imposed depends upon the facts of each case and the seriousness of the offenses involved, considered in light of any aggravating and mitigating circumstances. Louisiana State Bar Ass’n v. Whittington, 459 So.2d 520 (La.1984).
Respondent’s misconduct is clearly serious, and the record is replete with evidence of the actual harm his actions have caused to his clients, the public, the legal system, and the profession. The applicable baseline sanction here is disbarment. However, in their respective reports, the hearing committee and the disciplinary board have concluded that respondent’s offenses are so egregious that he should be permanently prohibited from applying for readmission to the bar.
11sWe agree. In Appendix E to Supreme Court Rule XIX, we set forth guidelines illustrating the types of conduct which might result in permanent disbarment. Respondent’s conduct falls under at least three of these guidelines: Guideline 1 (repeated or multiple instances of intentional conversion of client funds with substantial harm); Guideline 8 (engaging in the authorized practice of law); and Guideline 9 (instances of serious attorney misconduct or conviction of a serious crime, preceded by suspension or disbarment for prior instances of serious attorney misconduct). The numerous aggravating factors present in this case only reinforce the conclusion that respondent must be permanently disbarred.
Accordingly, we will accept the disciplinary board’s recommendation and impose permanent disbarment.
DECREE
Upon review of the findings and recommendations of the hearing committees and disciplinary board, and considering the record, it is ordered that A. Gill Dyer be permanently disbarred. Pursuant to Supreme Court Rule XIX, § 24(A), it is further ordered that respondent be permanently prohibited from being readmitted to the practice of law in this state. All costs and expenses in the matter are assessed against respondent in accordance with Su *832 preme Court Rule XIX, § 10.1, with legal interest to commence thirty days from the date of finality of this court’s judgment until paid.

. Respondent was disbarred in 1999 for deliberately overcharging his client by inflating legitimate expenses and charging for fictitious expenses, and for forging the endorsements on a $982 medical payments check and converting the funds to his own use. In re: Dyer, 99-1652 (La.10/19/99), 750 So.2d 942 (‘‘Dyer I").

. The formal charges in 00-DB-026 originally contained two counts, the second of which related to sanctions imposed against respondent in breast implant litigation pending in federal court. The ODC subsequently dismissed the second count, and accordingly, it is not discussed in further detail herein.

. According to the court minutes, respondent paid $6,000 at sentencing and was ordered to pay $1,000 a month thereafter until Ms. Mick-enhime was repaid in full. Interestingly, Ms. Mickenhime testified at the formal hearing that respondent’s bank would not honor the $6,000 check when she tried to cash it because there were not sufficient funds in respondent's account. The following day, at the insistence of the district attorney’s office, respondent delivered a $6,000 cashier’s check to Ms. Mickenhime.

. The committee made no finding with respect to the violation of Rule 8.4(b) alleged in the formal charges.