I,ATTORNEY DISCIPLINARY PROCEEDINGS
PER CURIAM.
This disciplinary matter arises from formal charges filed by the Office of Disciplinary Counsel (“ODC”) against respondent, Cardell A. Thomas, a disbarred attorney.
PRIOR DISCIPLINE
Before we address the current charges, we find it helpful to review respondent’s disciplinary history since he was admitted to the practice of law in Louisiana in 1983.
Respondent was publicly reprimanded by the disciplinary board on June 27, 1991 and on July 3, 1991. No details are provided in the instant record concerning the misconduct by respondent which prompted these two public reprimands.
In 1992, this court suspended respondent pursuant to a petition for consent discipline. In re: Thomas, 592 So.2d 1288 (La.1992).[1] Respondent was reinstated from this suspension on May 7, 1992.
|20n August 22, 1995, respondent was admonished by the disciplinary board for making improper direct contact with prospective clients, in violation of Rule 7.2(a) of the Rules of Professional Conduct.
In 1998, the ODC filed thirteen counts of formal charges against respondent, alleging that he violated numerous provisions of the Rules of Professional Conduct by failing to turn over financial documents, failing to render accountings to clients, neglecting legal matters, failing to protect a third party’s interest in settlement funds, and obtaining services by misrepresentation. After respondent answered the formal charges and generally denied any willful misconduct, he filed a petition for consent discipline in which he sought the imposition of a two-year suspension for the misconduct at issue in the formal charges. The ODC concurred in respondent’s petition, and the disciplinary board recommended the proposed discipline be accepted. On September 15, 1999, we rejected the petition for consent discipline and remanded the matter to the ODC “for further investigation and, if warranted, the filing of additional formal charges.” In re: Thomas, 99-2385 (La.9/15/99), 748 So.2d 399.
Following remand, the parties filed a joint petition seeking respondent’s interim suspension, which we granted on January 5, 2000. In re: Thomas, 99-3547 (La.1/5/00), 752 So.2d 169. Thereafter, respondent and the ODC filed a joint petition for consent discipline. Respondent generally admitted the factual allegations of the formal charges filed in 1998, as well as the factual allegations of some twenty additional matters still under investigation by the ODC, including failure to cooperate in a disciplinary investigation, improper payment of referral fees to various individuals, failure to keep clients reasonably informed *688 about the status of cases, neglect of legal matters, and failure to pay funds owed to third-party providers. The parties proposed that respondent be disbarred for this conduct. On October 6, 2000, |swe accepted the petition for consent discipline and disbarred respondent. In re: Thomas, 00-1952 (La.10/6/00), 770 So.2d 323. Respondent has never sought readmission from his disbarment.
Against this backdrop, we now turn to a consideration of the misconduct at issue in the present proceeding.
UNDERLYING FACTS
Count I — The Collins Matter
In September 2000, the ODC received a complaint against respondent filed by his clients, Vernell and Lisa Collins. In July 1997, Mr. and Mrs. Collins retained respondent to represent them in a claim for damages arising out of injuries sustained by Mrs. Collins in an automobile accident. In June 1998, respondent filed suit on behalf of his clients. Lisa Collins, et al. v. Weiner Bros., et al., No. 98-10748 on the docket of the Civil District Court for the Parish of Orleans. On January 5, 2000, at which time the personal injury case was still pending, this court placed respondent on interim suspension. Mr. and Mrs. Collins were unaware of respondent’s interim suspension until June 2000, when they were informed that a new attorney, Stephen Wiles,[2] would be representing them. Although Mr. Wiles acted as counsel for Mr. and Mrs. Collins during a mediation held in July 2000, respondent continued to be actively involved in the personal injury case and continued to advise Mr. and Mrs. Collins regarding the matter. On July 25, 2000, the case was settled for $325,000. Respondent deposited the settlement check into a bank account entitled “Cardell
A. Thomas/Attorney At Law/Trust Account.” On August 11, 2000, respondent wrote a check to Mr. and Mrs. Collins drawn on his client trust account in the amount of |4$191,000, representing their share of the settlement proceeds. Respondent then successfully negotiated a reduction in Mrs. Collins’ medical expenses. On August 25, 2000, respondent paid the sum of $2,000 to Premier Physical Therapy Clinics on behalf of Mrs. Collins. This check was also drawn on respondent’s client trust account.
Count II — The Kerne Matter
In January 2002, attorney E. Kelleher “Kelly” Simon filed a complaint against respondent with the ODC. Mr. Simon represented the defendants in personal injury litigation instituted by respondent on behalf of his clients, Lezin and Karen Kerne. Karen Kerne and Lezin Kerne v. Manuel LaGrange and Allstate Ins. Co., No. 97-11987 on the docket of the 22nd Judicial District for the Parish of St. Tammany. Approximately two weeks after respondent’s January 5, 2000 interim suspension, he and Paul Hymel, a claims adjuster for Allstate, reached an agreement to settle the Kerne case. On February 1, 2000, Mr. Simon forwarded the settlement check and the settlement documents to respondent. At that time, Mr. Simon was unaware of respondent’s interim suspension. The executed settlement documents were never returned to Mr. Simon, despite his requests; however, Allstate subsequently confirmed that the settlement check cleared after it was deposited into respondent’s client trust account.
DISCIPLINARY PROCEEDINGS
On January 10, 2005, the ODC filed two counts of formal charges against respondent, alleging that his conduct in the Col *689 lins and Kerne matters violated Rule 5.5 (engaging in the unauthorized practice of law) of the Rules of Professional | ^Conduct. The ODC sought the imposition of permanent disbarment for respondent’s misconduct.
Respondent answered the formal charges and admitted the factual allegations set forth therein. He also admitted that he “is guilty of additional professional misconduct warranting the imposition of discipline,” though he did not specifically admit that his misconduct violated Rule 5.5. With respect to the issue of sanction, respondent contended that permanent disbarment cannot legally be imposed in this case,[3] and would in any event be disproportionate to the misconduct charged.

Formal Hearing

This matter proceeded to a hearing. The hearing committee received documentary evidence from both respondent and the ODC. Respondent testified before the committee on his own behalf and on cross-examination by the ODC. In addition, the ODC offered the testimony of Mr. and Mrs. Collins, the complainants in Count I of the formal charges. At the conclusion of the hearing, the record was left open to obtain additional evidence relative to Count II. The perpetuation deposition of attorney Kelly Simon was taken on June 24, 2005 and was subsequently filed into the record, along with a certified copy of the records maintained by Paul Hymel, Allstate’s claims adjuster, in connection with the Kerne personal injury case. Mr. Hymel’s records reflect that settlement activity occurred in the Kerne case after the date of respondent’s interim suspension. Specifically, Mr. Hymel made a note to his file on January 14, 2000 indicating that he received a voice mail message from respondent “stating his client was interested in settling case. Atty didn’t say for how | fimuch. Called atty back and left message with him to call me.” A second note, dated January 19, 2000, indicates that respondent called Mr. Hymel “to discuss settlement of this claim. He demanded $10,000 plus the specials. I refused. He demanded $10,000 plus court costs. He accepted $9,830 for the loss and it was agreed that we would reimburse him for provable court costs up to $500.”
In his testimony before the committee, respondent admitted that he knew he could not practice law after his January 5, 2000 interim suspension; however, he maintained that he was unaware that depositing a settlement check into his client trust account and disbursing the funds constituted the practice of law.[4] Rather, respondent testified that he thought of the practice of law as “giving advice, going to Court, charging fees for stuff and that kind of thing.” Respondent also denied any belief that he was practicing law after *690 his interim suspension by negotiating a reduction in the medical expenses incurred by Mrs. Collins, or by speaking with Mr. and Mrs. Collins concerning their personal injury case. Likewise, regarding the Kerne matter, respondent denied that he engaged in the practice of law after his interim suspension. Notwithstanding the records maintained by the Allstate adjuster, Mr. Hymel, which reflected settlement negotiations in the Kerne case after the date of respondent’s interim suspension, respondent testified that the case had been settled prior to his interim suspension, but Allstate “took their time sending the check,” necessitating further telephone contact after the interim suspension.
| tHearing Committee Report
In its report, the hearing committee acknowledged respondent’s admission that the factual allegations of the formal charges are correct. The committee found respondent violated Rule 5.5 of the Rules of Professional Conduct, as that rule was in effect at the time of the misconduct, and that the only issue to be decided was the appropriate sanction to be imposed.
The committee determined that respondent’s misconduct violated a duty owed to the profession and that respondent was negligent in engaging in the unauthorized practice of law. The committee further found that the actual or potential injury caused by the misconduct was “negligible,” as the clients’ cases were settled and the clients received the proceeds of the settlements. Based on these findings, the committee determined that the applicable baseline sanction is suspension under the ABA’s Standards for Imposing Lawyer Sanctions.
The committee made the following findings regarding aggravating and mitigating factors:
The Hearing Committee finds that the overriding aggravating factor in the instant case is the fact that the Respondent had previous violations of the Disciplinary Rules and that the Respondent was disbarred at the time of the instant rule violation.[5]
However, the Hearing Committee finds that the Respondent’s misconduct was strictly a technical violation of Rule 5.5 as he simply disbursed settlement funds to the clients after he had been disbarred. The Hearing Committee finds that the Respondent honestly believed that distributing the settlement proceeds was the proper thing to do once the cases had been settled. The Hearing Committee finds this reflects the absence of a dishonest or selfish motive on the part of the Respondent. The Hearing Committee believes that the Respondent did not know that simply disbursing the settlement funds could be considered |sa violation of the Rules of Professional Conduct. The Hearing Committee considers this a mitigating factor.
The Hearing Committee recognizes that the Respondent was cooperative with the disciplinary board throughout these proceedings and notes that Respondent did not dispute the facts. The Hearing Committee considers this to be a mitigating factor.
Finally, the Hearing Committee considers the long delay in these disciplinary proceedings as a mitigating factor.
Considering these findings, the committee recommended that respondent be sus *691 pended from the practice of law for an additional period of two years.
The ODC filed an objection to the hearing committee’s recommendation.

Disciplinary Board Recommendation

Noting that respondent admitted to the factual allegations of both counts of the formal charges, the disciplinary board agreed that the hearing committee was correct in finding a violation of Rule 5.5(a). At the time of the misconduct at issue, Rule 5.5(a) provided that a lawyer should not practice law in a jurisdiction where doing so violated the regulation of the legal profession in that jurisdiction. This rule cross-referenced La. R.S. 37:212, the statute which defined the practice of law in Louisiana at that time. By continuing to hold himself out as an attorney, counseling clients, negotiating settlements with Allstate and Premier Physical Therapy, and depositing and disbursing settlement funds in his trust account, the board found that respondent engaged in the practice of law under the former version of Rule 5.5 and La. R.S. 37:212(A)(1) and (2)(a)(b)(c).
The board found that respondent violated duties owed to the profession and to the legal system. He acted intentionally in practicing law after his interim suspension, | primarily in order to protect his own fee interests.[6] Respondent blemished the reputation of the legal profession and caused significant potential harm to his former clients and the legal system. The baseline sanction for respondent’s misconduct is disbarment.
The board found the sole mitigating factor present is delay in the disciplinary proceedings. The board found the following aggravating factors are present: prior disciplinary offenses, dishonest or selfish motive, a pattern of misconduct, multiple offenses, submission of false testimony during the disciplinary proceedings which was contrary to the facts to which he had previously stipulated in his answer to the formal charges, and substantial experience in the practice of law.
The board agreed with the ODC that Guideline 8 of the permanent disbarment guidelines (following notice, engaging in the unauthorized practice of law during the period of time in which the lawyer is suspended from the practice of law or disbarred) is applicable to this case. Respondent has not disputed the fact that he had notice of his interim suspension from the practice of law, effective January 5, 2000. He also has admitted that he engaged in actions following his interim suspension which constitute the unauthorized practice of law. As such, the board found the conditions of Guideline 8 have been met.
Based on this reasoning, the board recommended that respondent be permanently disbarred. Two board members dissented and would adopt the hearing committee’s recommendation that respondent serve an additional two-year suspension before becoming eligible for readmission.
| mRespondent filed an objection to the disciplinary board’s recommendation. Accordingly, the case was docketed for oral argument pursuant to Supreme Court Rule XIX, § 11(G)(1)(b).
DISCUSSION
Bar disciplinary matters fall within the original jurisdiction of this court. La. Const, art. V, § 5(B). Conse *692 quently, we act as triers of fact and conduct an independent review of the record to determine whether the alleged misconduct has been proven by clear and convincing evidence. In re: Quaid, 94-1316 (La.11/30/94), 646 So.2d 343; Louisiana State Bar Ass’n v. Boutall, 597 So.2d 444 (La.1992). While we are not bound in any way by the findings and recommendations of the hearing committee and disciplinary board, we have held the manifest error standard is applicable to the committee’s factual findings. See In re: Caulfield, 96-1401 (La.11/25/96), 683 So.2d 714; In re: Pardue, 93-2865 (La.3/11/94), 633 So.2d 150.
Respondent has admitted the factual allegations of the formal charges, and based upon that admission, as well as the other evidence in the record, we find there is clear and convincing evidence of his violation of Rule 5.5(a) of the Rules of Professional Conduct. Respondent counseled clients, negotiated the settlement of his clients’ personal injury claim, handled client funds, and negotiated with a third-party healthcare provider on behalf of his clients, all at a point in time when he knew he was not allowed to practice law in this state because he was on interim suspension. Under these facts, there can be no doubt that respondent engaged in the unauthorized practice of law, in violation of Rule 5.5(a).
Having found evidence of professional misconduct, we now turn to a determination of the appropriate sanction for respondent’s actions. In considering | nthat issue, we are mindful that disciplinary proceedings are designed to maintain high standards of conduct, protect the public, preserve the integrity of the profession, and deter future misconduct. Louisiana State Bar Ass’n v. Reis, 513 So.2d 1173 (La.1987). The discipline to be imposed depends upon the facts of each case and the seriousness of the offenses involved, considered in light of any aggravating and mitigating circumstances. Louisiana State Bar Ass’n v. Whittington, 459 So.2d 520 (La.1984).
The sanctions imposed by this court for the unauthorized practice of law are largely dependent upon the individual circumstances of the case. In general, however, when the attorney has manifested a conscious intent to flout the authority of this court by practicing law after being prohibited from doing so, we have not hesitated to impose disbarment. See, e.g., In re: Jones, 99-1036 (La.10/19/99), 747 So.2d 1081 (attorney disbarred for engaging in the unauthorized practice of law on four occasions, after being suspended in the past for similar misconduct). The serious nature of such actions is underscored by La. R.S. 37:213, in which our legislature has made it a felony to engage in the unauthorized practice of law. It was against this backdrop that we included the unauthorized practice of law as one of the types of conduct that might warrant permanent disbarment.[7]
There is no doubt that sanction is warranted here. Respondent intentionally engaged in the practice of law after he was placed on interim suspension by consent. This misconduct is even more egregious when one considers respondent’s lengthy prior disciplinary record and his unwillingness in these proceedings to acknowledge the wrongfulness of his conduct.
*693 Lain the final analysis, respondent’s refusal to respect the authority of this court demonstrates that he lacks the fitness to hold a license to practice law. Therefore, he must be permanently disbarred.
DECREE
Upon review of the findings and recommendations of the hearing committee and the disciplinary board, and considering the record, briefs, and oral argument, it is ordered that the name of Cardell A. Thomas, Louisiana Bar Roll number 1148, be stricken from the roll of attorneys and that his license to practice law in the State of Louisiana be revoked. Pursuant to Supreme Court Rule XIX, § 24(A), it is further ordered that respondent be permanently prohibited from being readmitted to the practice of law in this state. All costs and expenses in the matter are assessed against respondent in accordance with Supreme Court Rule XIX, § 10.1, with legal interest to commence thirty days from the date of finality of this court’s judgment until paid.
JOHNSON, J. dissents and assigns reasons.

. The petition for consent discipline stemmed from respondent's conviction of one misdemeanor count of commercial bribery, a violation of La. R.S. 14:73. For his conviction, respondent proposed that he be suspended from the practice of law for a period of one year and one day, with all but sixty days deferred, subject to a period of supervised probation with conditions, including the payment of restitution. The ODC concurred in respondent's petition, and the disciplinary board recommended the proposed discipline be accepted. This court ultimately accepted the petition for consent discipline, effective March 9, 1992. In re: Thomas, 591 So.2d 1172 (La.1992).

. Mr. Wiles worked in respondent's law office.

. Respondent asserted that the imposition of permanent disbarment would constitute an ex post facto application of the law. However, it is well settled that the amendments to Supreme Court Rule XIX, § 10 and § 24 providing for permanent disbarment do not have an ex post facto effect on cases arising prior to the adoption. In re: Laudumiey and Mann, 03-0234 (La.6/27/03), 849 So.2d 515, cert. denied, 540 U.S. 1048, 124 S.Ct. 814, 157 L.Ed.2d 697 (2003).

. In 2000, when respondent's misconduct occurred, Rule 5.5(a) provided only that a lawyer shall not "practice law in a jurisdiction where doing so violates the regulation of the legal profession of that jurisdiction; ...” Effective July 1, 2002, this court amended Rule 5.5 to specify certain activities that constitute the practice of law, and to provide that "a suspended lawyer shall not receive, disburse or otherwise handle client funds.” Although the amended version of the rule is not applicable to the instant case, we believe it clarifies the type of conduct to which Rule 5.5 was always intended to apply.

. There are several references in the committee's report to the fact that respondent’s misconduct occurred when he was disbarred. However, respondent was interimly suspended, not disbarred, at the time he engaged in the unauthorized practice of law.

. In making this determination, the board cited respondent’s testimony to the effect that he deposited the Collins' settlement check in his client trust account and disbursed the funds himself because he believed Mr. and Mrs. Collins were going to "screw me out of my fee and my expenses.”

. Notably, since the adoption of permanent disbarment in 2001, we have imposed that sanction in some twenty cases involving the unauthorized practice of law. See, e.g., In re: Patrick, 07-1222 (La. 12/14/07), 970 So.2d 964; In re: Melton, 05-0409 (La.6/17/05), 905 So.2d 281; and In re: Jefferson, 04-0239 (La.6/18/04), 878 So.2d 503.